1

P. "Mike" Palmer
18402 N. 19th Ave., #109
Phoenix, AZ 85023
602-513-3738 (cell)
Pro Se

☐ FILED ☐ LODGED
☐ RECEIVED ☐ COPY

OCT 0 5 2011

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ P DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| PETER MICHAEL PALMER, an individual<br><br>Plaintiff<br><br>vs.<br><br>KENTON D. JONES, in his official capacity as Yavapai County Superior Court judge; ROBERT M. BRUTINEL, in his official capacity of Arizona Supreme Court Justice; JOHN PELANDER, in his official capacity of Arizona Supreme Court Justice; W. SCOTT BALES, in his official capacity of Arizona Supreme Court Justice; ANDREW D. HURWITZ, in his official capacity of Arizona Supreme Court Vice Chief Justice; REBECCA WHITE BERCH, in her official capacity of Arizona Supreme Court Chief Justice; John or Jane Does I-M, in their official capacity of judicial officer in and for the State of Arizona.<br><br>Defendants | **11-CV-1896-PHX-GMS**<br><br>**ZEROTH\* AMENDED PETITION FOR EMERGENCY TEMPORARY RESTRAINING ORDER, MOTION FOR PRELIMINARY INJUNCTION, AND VERIFIED COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF**<br><br>**(\*AMENDED BEFORE SERVICE)**<br><br>(Title 42 U.S.C. §1983) |

In the interest of justice and judicial economy, and in the spirit of—but not quite pursuant to—Fed.R.Civ.P. 15(a)(1), pro se plaintiff amends his complaint **before** service. Plaintiff corrects a few typos, clarifies a few points, corrects one point of trivia and adds two additional Counts. As no parties have been served, Rule 15(a)(2) is not in effect, the 21 day clock has not started, and there can be no harm to any party by amending prior to service.

**OVERVIEW**

1.      For reasons to follow, pro se plaintiff petitions the court for a Rule 65(b) Temporary Restraining Order (without Notice) to immediately restore the status quo. Extraordinary circumstances preclude any other remedy to mitigate potential true irreparable harm to plaintiff. Plaintiff seeks to immediately restore his numerous Constitutional rights (both State and Federal), which have been unlawfully revoked by defendants under color of (no) law.

2.      After Notice is served, plaintiff moves the court to continue the TRO by way of a Rule 65(a) Preliminary Injunction to preserve the status quo. After the Preliminary Injunction, plaintiff then asks the court for a "Permanent Injunction" via summary judgment, based on the fact that, quite simply, there is no Arizona law allowing defendants to deprive plaintiff of his constitutional rights.

3.      Ironically, pro se plaintiff seeks a Federal Injunction to stop a State Injunction. Specifically, plaintiff seeks to suspend and ultimately prohibit an unlawful and unconstitutional ex parte State civil Injunction against Harassment, brought against plaintiff as punishment for blogging on the Internet.[1] As will be shown, the State Injunction was issued in violation of the U.S. Constitution as a proximate result of plaintiff exercising his First Amendment right to free speech as he carried out his First Amendment right to exercise of religion. On its face, punishing plaintiff for blogging by issuing a civil Injunction chills plaintiff's—and every Arizona residents'—First Amendment rights.

4.      Even though abridging freedom of speech and prohibiting the exercise of religion is typically considered "irreparable harm" by the courts, the extraordinary circumstance requiring urgency in this matter arises from the potential for literal irreparable harm to plaintiff: death. Specifically, plaintiff has been rendered defenseless

---

[1] "Blog," a Web site containing the writer's or group of writers' own experiences, observations, opinions, etc., and often having images and links to other Web sites. (per dictionary.com)

1   because, as a proximate result of the Injunction, the State has revoked plaintiff's right to

2   bear arms! For blogging! Furthermore, defendants have put plaintiff's name on the FBI's

3   National Criminal Information Center database. (NCIC.)

4       5.      There is no lawful basis for defendants to deprive plaintiff of his Federal and

5   State gun rights. There is no lawful basis for defendants to place plaintiff's name in the

6   NCIC database, depriving plaintiff of gun ownership in any state or federal district.

7   Plaintiff has essentially been lowered to the level of a criminal (a felon) via a civil

8   matter, a violation of due process Constitutional right in itself, absent any law.

9       6.      Not only is this a U.S. Constitutional violation, plaintiff has been unlawfully

10   and unconstitutionally deprived of his State right "to bear arms in defense of himself"

11   (and his family, loved ones and fellow citizens), per Article 2, § 26 of the Arizona

12   Constitution. Being unarmed in the Phoenix Metroplex is inherently dangerous. Plaintiff

13   does not have to remind the court that even a federal judge can be murdered in a grocery

14   store parking lot in broad daylight. (My condolences to Judge Roll's family and friends.)

15   Plaintiff is fearful and has modified his life (i.e., suffered harm) as a proximate result of

16   the Injunction.

17       7.      As will be shown, because defendants are arbitrary and capricious in their

18   application of (no) law, and because plaintiff has exhausted his administrative remedies

19   with defendants, plaintiff ultimately seeks Injunctive and Declaratory relief to

20   permanently enjoin defendants from ever again depriving plaintiff—and all Arizona

21   residents—of his dual Constitutional rights to bear arms. Also, plaintiff seeks to

22   permanently enjoin defendants from chilling plaintiff's—and all Arizona

23   residents'—First Amendment right to free speech and/or freedom to exercise religion via

24   civil Injunctions. Further, plaintiff seeks to prevent defendants from depriving

25   plaintiff—and all Arizona residents—of his Fifth and Fourteenth Amendment rights and

26   other Arizona Constitutional rights violated via Injunctions. (Plaintiff may amend to add

27   more.) Therefore, granting this TRO will be in the public interest. It may well be that the

28   court determines the entire state law underlying this action is fundamentally

1    unconstitutional.

2       8.    Pursuant to Rule 65(b)(1)(B) a certification is included showing good cause

3    for issuing the TRO without Notice due to plaintiff's IFP status. Pursuant to case law

4    touching Rule 65(a), good cause will be shown for issuing a Preliminary Injunction to

5    preserve the status quo until such time the court grants permanent relief in the form of a

6    final Order.

7                           **JURISDICTION AND VENUE**

8       9.    This court has subject matter jurisdiction over plaintiff's claims regarding the

9    U.S. Constitution under 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 1983. This

10   court has authority to grant declaratory relief pursuant to the Declaratory Judgement Act,

11   28 U.S.C. §§ 2201 and 2202. This court has jurisdiction over plaintiff's state-law claims

12   under 23 U.S.C. § 1367.

13      10.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). All defendants

14   are sued in their official capacity and their official places of business are all located

15   within this District. All of the events giving rise to this complaint occurred within this

16   District.

17                                    **PARTIES**

18      11.   Plaintiff, PETER MICHAEL PALMER is a naturally born citizen of the

19   United States, at all times relevant resides in Maricopa County, Arizona. Having been

20   'born again' about 30 years ago[2], he is an active 'Evangelical Christian' with sincerely

21   held religious beliefs, whose desire is to see his fellow man saved from hell.[3]

22      12.   Defendant KENTON D. JONES is a Superior Court judge in Yavapai County,

23   Arizona. Defendant Jones is sued in his official capacity.

24      13.   Defendant ROBERT M. BRUTINEL is a Justice of the Arizona Supreme

25   _____

26      [2] "Jesus declared, 'I tell you the truth, no one can see the kingdom of God unless
27   he is born again.'" John 3:3

28      [3] See my youtube channel and video "O.J. Simpson and Christianity," at
     http://bit.ly/ngIwkt

1   Court. Defendant Brutinel is sued in his official capacity.

2       14.   Defendant JOHN PELANDER is a Justice of the Arizona Supreme Court.

3   Defendant Pelander is sued in his official capacity.

4       15.   Defendant W. SCOTT BALES is a Justice of the Arizona Supreme Court.

5   Defendant Bales is sued in his official capacity.

6       16.   Defendant ANDREW D. HURWITZ is the Vice-Chief Justice of the Arizona

7   Supreme Court. Defendant Hurwitz is sued in his official capacity.

8       17.   Defendant REBECCA WHITE BERCH is the Chief Justice of the Arizona

9   Supreme Court. Defendant Berch is sued in her official capacity.

10      18.   Defendants JOHN or JANE DOES I-M encompass all judicial officers in the

11  State of Arizona, who are, by law and by definition, bound by the Arizona Supreme

12  Court's various rules. Defendants Does are sued in their official capacity.

13

14                               **FACTS**

15  **Background**

16      19.   A little more than a week ago, on the evening of Friday, September 16, 2011,

17  I was served with a civil Injunction Against Harassment (Exhibit 1) ostensibly in

18  accordance with Arizona Revised Statute § 12-1809. (But plainly not, as I will show

19  later.) The Petitioner was a Melody Thomas-Morgan, former known as Melody Anne

20  Bodine. The Injunction was issued ex parte, dated April 10, 2011, but not served until

21  now, more than five months later. The Injunction had not been modified or amended

22  from the time issued to the time served.

23      20.   Miss Thomas-Morgan lives in Prescott, Arizona. I live in Phoenix. I have only

24  visited Prescott to observe trials involving Miss Thomas-Morgan. She had previously

25  sought and obtained an Injunction against me in January 2009, which expired January

26  2010. Since I did not harass anyone, I challenged the Injunction in the Prescott Justice

27

28

1   Court. And lost.[4]

2       21.   In her petition for her second Injunction (Exhibit 2), Thomas-Morgan's states

3   the sole proximate reason for seeking a new Injunction more than a year after the first is

4   because, in March 2011, presumably while 'googling' for her name, she discovered a

5   blog titled *That Woman Jezebel*.[5] She swears upon oath the blog talks about her

6   "death."[6] (Please note that these are her quotes. She consistently put "death" in quotes in

7   her petition.) The blog had been up since December 2010, four months prior to her

8   petition for an Injunction Against Harassment.

9       22.   It is not true that the blog ever mentions the "death" of Miss Thomas-Morgan.

10   (Nor are the Bodine children ever mentioned in the blog, as she implies.)

11       23.   Miss Thomas-Morgan's former husband, Mr. Bodine, contacted me in April

12   telling me his ex-wife had gone to the Prescott Police to report me for blogging about

13   her. Consistent with this, in her petition she writes, "The City Prosecutor and the

14   Prescott Police Dpt have recommended that I seek these Orders because of the on-going

15   nature of Mr. Palmer's harassment (esp. w/regards to my "death.") (Id.) Again, she put

16   "death" in quotes. In her petition, she states "I come before this Court because again,

17   Peter Michael Palmer (aka Mike Palmer) about my 'death.'" [sic] Later, she restates

18   "Again, currently, Mr. Palmer is talking about my 'death.'"

19       24.   She refers the court to "several posts from Mr. Palmer's Blog." Specifically,

---

21      [4] As of this writing, per the last letter I received, the FBI Civil Rights Division

22   is investigating the irregularities in that trial due to tampering of the court file by court
officials.

23      [5] http://thatwomanjezebel.blogspot.com

24

25      [6] Miss Thomas-Morgan gives other "reasons" for seeking an Injunction, citing
half-truths; old, stale accusations, that by law are time barred (Arizona law requires a

26   court to find "reasonable evidence . . . of harassment during the year preceding" the
petition); off point; and assume facts not entered into evidence. They do not quality as

27   "acts directed at a person." (A requirement to get an Injunction.) In fact, they are

28   ridiculous and would be funny had not a Superior Court judge signed on, making a
federal case out of this.

1   "Mr. Palmer's outrageous blog." Clearly this is about content of speech.

2        25.   It is true that the blog *That Woman Jezebel* talks about spiritual life and

3   spiritual death. Spiritual "death" as in "The wages of sin is death," the second step in the

4   Evangelical's "Roman Road" (Romans 6:23a in the Bible). Spiritual "death" as also in

5   the well known verse (among born-again Christians): "As for you, you were dead in

6   your transgressions and sins . . ." (Ephesians 2:1) In fact, the header in the blog says,

7   "On the life... err, death and death of Mrs. Melody Anne Bodine, 6/25/1982 -

8   4/21/2009." It is merely documentary. The "birth date" of 6/25/1982 is the date of the

9   former Mrs. Bodine's wedding, when she became Mrs. Bodine. The "death date" is the

10  date the former Mrs. Bodine legally changed her name. On the day of her divorce decree

11  she ceased to be Mrs. Bodine in the eyes of God. She ratified that a few months later by

12  changing her name and ceased to be Mrs. Bodine in the eyes of the world. Thus, she is

13  "twice dead," a quote from Jude 12 in the Bible. But to repeat, it is not true the blog ever

14  mentions the death of Miss Thomas-Morgan.

15  **First Amendment Protected Speech, Part I**

16       26.   In March 2011, the U.S. Supreme Court ruled 8-1 that "Speech is powerful. It

17  can stir people to action, move them to tears of both joy and sorrow, and—as it did

18  here—inflict great pain. On the facts before us, we cannot react to that pain by

19  punishing the speaker. As a Nation we have chosen a different course—to protect even

20  hurtful speech on public issues to ensure that we do not stifle public debate." (Quoting

21  Justice Roberts in *Snyder v. Phelps*, et al. 562 U. S. ____ (2011)) The case cited

22  involved religious free speech. (The infamous Westboro Baptist church.)

23       27.   Similarly, in mid-July 2011, the Ninth Circuit reversed a criminal conviction

24  of a man who blogged about 50 caliber bullets and a presidential candidate. Ostensibly

25  real, serious "death threats." But as Chief Judge Kozinski wrote, "Taking the two

26  message board postings in the context of all of the relevant facts and circumstances, the

27  prosecution failed to present sufficient evidence to establish beyond a reasonable doubt

28  that Bagdasarian had the subjective intent to threaten a presidential candidate . . . given

any reasonable construction of the words in his postings, those statements do not constitute a "true threat," and they are therefore protected speech under the First Amendment." *United States v. Bagdasarian*, 2011 WL 2803583 (9th Cir. July 19, 2011)

28.    Taking the blog *That Woman Jezebel* in the context of all of the relevant facts and circumstances, given any reasonable construction of the words in the postings, the statements in the blog do not constitute a "true threat," and they are therefore protected speech.

29.    It is not necessary for the court to exert any effort to make this determination, for ironically, Thomas-Morgan has made it for the court. While crafting this complaint, I received a Cease & Desist letter from Thomas-Morgan's attorney. In the letter (Exhibit 3), Thomas-Morgan, through her attorney, acknowledges the blog is First Amendment protected speech, stating ". . . you certainly have the right to blog about your various fixations with Ms. Thomas-Morgan . . . "

30.    Further, as previously noted, in her petition she consistently puts the word "death" in quotes, making it clear that even <u>she</u> understands the word is not to be taken literally and knows there is no true threat.

31.    Considering the popularity of blogging and micro-blogging (i.e., Twitter) in American society, it is in the public interest for this court to rule that blogging in general is protected speech and cannot be considered harassment.

**First Amendment, Part II**

32.    Moreover, the blog is clearly spiritual, of a Christian nature, and clearly says so. In fact, the title is a quotation from Jesus' warning a wayward church, recorded in The Revelation 2:20: "Nevertheless, I have this against you: You tolerate that woman Jezebel, who calls herself a prophetess. By her teaching she misleads my servants into sexual immorality . . . "

33.    In the last paragraph of the C&D letter above, Thomas-Morgan's attorney acknowledges the Christian nature of the blog by asking for a post about the meaning of "the Gospel of John 8:7." [sic]

34.  Despite these admissions by Thomas-Morgan that the blog is protected speech and an exercise of religion, she did not move to withdraw her Injunction, as the law provides. I was served with the Injunction on the very day the C&D letter was dated.

35.  The Injunction orders that I have no contact with Thomas-Morgan or her two minor children and one who is of majority.[7] The Injunction also prohibits me from attending the apostate First Baptist Church in Prescott or the Yavapai County Courthouse, arguably at any time. (When Thomas-Morgan is present. But I cannot know when she is present. Given her pattern and practice of running to the police at the slightest provocation, the risk of being arrested is too great for me to risk going to the church building or courthouse at all.)

**The Second Amendment**

36.  But in addition to the usual "no contact" provisions, the Injunction, absent lawful basis, also prohibits me from possessing firearms, via a checkbox on the form.

37.  In the mind of judges and clerks in Arizona, Title 13 Criminal Orders of Protection (A.R.S. § 13-3602)—which does allow firearm restrictions—and Title 12 Civil Injunctions Against Harassment (A.R.S. § 12-1809)—which does not—are considered interchangeable. Staff lump them together, calling them "Protective Orders." (Or sometimes "Restraining Orders.") Commensurate with this mentality, the Arizona Supreme Court issues the same Petition form for both actions, a check mark being the only differentiator between a criminal and civil matter. (See Exhibit 2.)

38.  But like sharks and dolphins, these are two different animals. They may look similar, they may perform similar functions, but one is a lot meaner than the other. An Order of Protection is a Title 13 criminal matter ("Domestic Violence"), very serious, complete with NCIC reporting. (Police officers have lost their job for this.) An Injunction Against Harassment is supposed to be a lot friendlier, merely a Title 12

---

[7] Presumably an oversight by Judge Jones, since A.R.S. § 12-1809 only allows for minors to be listed as protected persons. By law, William Bodine has to file his own petition for an Injunction.

procedural (i.e., civil) matter, with no firearm or NCIC provisions. Unfortunately, a lot of what is in § 13-3602 has genetically altered § 12-1809, turning it into a monster. (See Exhibit 4.[8]) The first Injunction (cited in para. 9) did not prohibit me from possessing firearms, but after I challenged the Injunction in court, JP Judge Mary E. Hamm sua sponte prohibited me from possessing firearms. The paperwork to invoke this action is colloquially, but incorrectly, known as a "Brady Restriction." (Exhibit 4) It's incorrect because Brady only applies to domestic partners, per the Criminal Code, A.R.S. 13-3602(G)(4). There are no "crimes of passion" in Civil Injunctions.

39.   Arizona law on Civil Injunctions, A.R.S. § 12-1809 (Exhibit 5) does not provide for firearm restrictions. Nowhere in the law are the words "firearm" or "weapon." Nor is the phrase "defendant shall transfer the firearm within twenty-four hours after service of the order" which appears on the instant Civil Injunction served me. (Exhibit 1.) That phraseology is from § 13-3602(G)(4), the law on OOP's. Subsequently, I filed a petition to rescind JP Judge Hamm's Brady Restriction.

40.   I prevailed, and JP Judge Hamm rescinded her order on May 2009. (Exhibit 6)

**NCIC - No Due Process. Irreparable harm**

41.   Until I challenged it, the unlawful Brady Restriction ordered my name be added to the FBI's NCIC database. (Learned upon inspection of the physical court file.) Upon information and belief, my name has again been added to the NCIC database as a proximate result of this second civil Injunction. By being prevented from owning a firearm anywhere in the United States, I have effectively been reduced to a felon. I am prevented from employment where a weapon is required. I have suffered criminal repercussions without the due process of a criminal trial.

42.   Interestingly, when one is arraigned on a criminal charge, if told they cannot possess firearms as a condition of release, one is not entered into the NCIC database.

---

[8] Note the sentence that says "The protective order listed remains in effect." But note the caption says that this matter is an "Injunction Against Harassment." It is NOT an Order of Protection.

43.    After JP Judge Hamm rescinded her order, concerned whether my name had really been removed from the NCIC database, I contacted a personal friend who is an Assistant Attorney General for the State of Arizona working in Law Enforcement. I asked about FOIA'ing the NCIC database. The Ass't AG told me the NCIC database was "confidential" and was not subject to FOIA requests. The Ass't AG also told me the NCIC database was notoriously full of errors.

44.    Some time after that, while filing papers with the Federal Clerk in the Phoenix Courthouse, I overheard a woman request an NCIC audit on a party. Curious, since I had been told the database was not 'queryable,' I asked her about it. She introduced herself as an Assistant Federal Prosecutor (wore a badge) and confirmed what my Ass't AG friend had told me. If I recall correctly, she said the NCIC database was so corrupt, it was standard mandatory federal court procedure to perform an audit of the database at the end of any deportation hearing to check for veracity.

45.    I presume the court is aware of this, so I ask the court to take judicial notice that the NCIC database is a mess, subject to error, not viewable, and therefore, not correctable by ordinary citizens. (Think TSA's "No Fly" list.) There is no remedy or redress for having one's name improperly stuck in the NCIC database and the State of Arizona can offer me no remedy for redress.

46.    Absent intervention by a federal court, this may cause true irreparable harm. Even if I challenge Judge Jones on the unlawfulness of Brady in a civil Injunction and prevail again, there is still the potential for irreparable harm if I fall through the cracks and my name is not removed from the NCIC database. I would immediately be arrested as a felon for violating a non-existing court order, without remedy. Even carrying a copy of the court's order vacating the Brady will not be enough to convince a cop whose computer tells him otherwise. (He could say I "Photoshopped" a fake court order.)

**Exhausting Administrative Remedies**

47.    Sometime after I prevailed in rescinding JP Judge Hamm's unlawful Brady, I tripped across the Arizona Supreme Court's *Arizona Rules of Protective Order*

1   *Procedure* (ARPOP) on the Internet. (Pertinent pages in Exhibit 6)

2       48.   The ARPOP is a compendium of the laws regarding criminal orders of

3   protection and civil injunctions against harassment. It is a handbook, of sorts, to give

4   judges guidance when needed. For example, it defines a "series of acts"—which is not

5   codified by the Legislature—as "two." But the ARPOP is not law.

6       49.   While it cites "Rules," all the rules in the ARPOP refer back to the Arizona

7   Revised Statutes for support. All but one.

8       50.   Rule 6.E.4.e.2 of the ARPOP says, "The judicial officer shall ask the plaintiff

9   about the defendant's use of or access to weapons or firearms. The judicial officer may

10  prohibit the defendant from possessing, purchasing or receiving firearms and

11  ammunition for the duration of the Injunction Against Harassment." But there is no

12  A.R.S. cite for this "Rule," because the law the Arizona Legislature gave us (§ 12-1809)

13  simply does not provide for firearm restrictions in Injunction law. Thus, by making up

14  "law," the Arizona Supreme Court is usurping power granted to the Arizona Legislature,

15  in violation of Article III of the Arizona Constitution. (Distribution of Powers.)

16      51.   Trying to be a good citizen and trying to save my fellow man from the same

17  harm I suffered, I asked the Public Information Officer of the Arizona Supreme Court

18  about this. She informed me that our Supreme Court had a public forum, whereby

19  anyone could petition the court for a rule change.

20      52.   Dutifully, in December 2009, I filed an emergency petition in the forum,

21  asking the court to rescind Rule 6.E.4.e.2 in the ARPOP, noting then only the violations

22  of gun rights and that had no lawful basis for the rule. (Exhibit 8)

23      53.   On August 31, 2010, the Arizona Supreme Court "rejected" my petition

24  without comment.

25      54.   Nevertheless, on September 7, 2010 I received some "side-channel"

26  encouragement in the form of an email from Ellen Crowley, Chief Staff Attorney of the

27  Arizona Supreme Court:

28          The justices asked me to let you know that, although your proposal in this

> matter was rejected, the Court believed some of your argument deserved further consideration. Therefore, the matter has been referred to the State Bar Family Law Practice and Procedure Committee to consider and recommend to the Court standards to guide judges in their decision whether to prohibit possession of firearms during the pendency of an injunction against harassment.

This email from the justices shows that even defendants believe my arguments have merit! Since the time of my petition, I have discovered more constitutional violations that accrue as a proximate result of the defendants' act, which are presented under Causes of Actions. Therefore, I am likely to prevail in this matter.

55.   The Arizona Supreme Court has a procedure for adopting / changing rules on an emergency basis.

56.   Sadly, as of this date, Arizona Supreme Court internal Rule 6.E.4.e.2. has not been repealed and still does not conform with Arizona law. As a proximate consequence, I again find myself the victim of an unlawful court order.

**Restoring/Preserving the Status Quo**

57.   The Arizona Legislature, along with Governor Brewer, recently affirmed our cherished right to keep and bear arms without infringement, allowing Arizona residents to carry firearms concealed without requiring background checks, fingerprinting, etc.

58.   As it pertains to the status quo, except for the short suspension of my Second Amendment right due to JP Judge Mary Hamm's unlawful action, and a short suspension when I was prohibited from carrying as a release condition in a matter of "criminal faxing,"[9] I have carried a firearm ever since moving to Arizona, approximately thirty years, without incident.

59.   The criminal faxing charge was dismissed in early November 2009. From that time until last week, I have carried a firearm.

60.   Miss Thomas-Morgan obtained her Injunction in April but did not serve it

---

[9] Malicious prosecution. Charges dropped days before trial. Exculpatory evidence withheld. The focus of a federal civil right complaint currently before the Ninth on a perfunctory procedural matter.

1    until last week. I have carried a firearm during that time. I haven't been to Prescott since

2    her last trial, in January. You can be sure Thomas-Morgan would have called her friends

3    in the Prescott Police had there been the slightest provocation. (As when she went to

4    them about the blog.) It's not germane to this federal matter since she's not a defendant,

5    but no harm has come, or will come, to Thomas-Morgan from plaintiff. There is no legal

6    reason to not restore the status quo.

7    **Civil Injunction. No justice. No remedy**

8        61.    Truly, Arizona's Civil Injunction procedure here is patently unconstitutional.

9    And truly, it does not conform with the Federal system. They are in sharp contrast. Here,

10   in the Federal Court, Injunctions are an "extraordinary remedy," whereas, in Arizona,

11   Civil Injunctions are handed out for the asking, whether they comply with law or not.

12   (As in this instant matter and most infamously, Michael Roth's Injunction in Quartzsite,

13   Arizona, where Mr. Roth was deprived of his Second Amendment right simply because

14   he called a Councilman a "turd.")[10] In the Federal Court, an Injunction maintains the

15   status quo. In Arizona, Injunctions upset the status quo. In the Federal Court, ex parte

16   Injunctions expire in 14 days. In Arizona, they last for a year. In the Federal Court, there

17   is a balancing test typically employed to determine whether to issue an injunction, where

18   the defendant's Fifth Amendment due process rights are weighed (heavily) against the

19   immediacy of the harm allegedly done to the plaintiff. In Arizona, one citizen can swear

20   out a false petition with no consequences, and totally ex parte, deprive another citizen of

21   his constitutional rights! And force defendants in an Injunction to incur attorney fees

22   with no remedy for recovery. Unlike the federal system, there is no bond required from

23   petitioner to mitigate filing frivolous petitions. THAT's harassment!

24       62.    In an attempt to mitigate this unconstitutional practice of "guilty until proven

25   innocent," Arizona ostensibly guarantees the defendant in an Injunction an "expedited"

26

27        [10] A transcript of the proceedings and copies of the petition available at

28   http://powerandpolitic.wordpress.com/2011/07/26/
     councilman-joe-winslow-v-michael-roth-exactly-who-was-threatening-who/

1  trial (within ten days of request) to challenge and vacate an Injunction. However, that is

2  illusionary and not a proper remedy.

3       63.   At my first Injunction hearing, JP Judge Mary Hamm summarily suspended

4  the Rules of Civil Procedure (in violation of A.R.S. § 22-211), telling me from the

5  bench, "this isn't a trial." So not even judges believe these are real trials in Civil

6  Injunctions. They are just illusions.

7       64.   Even if Judge Jones chooses to conform to the law and grants me legitimate

8  trial, ten days is not enough time to make a zealous defense. For example, in my case,

9  there would be several pretrial motions that would need to be filed[11], which, with the

10  back and forth of Response & Reply, can easily extend time to months before trial.

11  Record requests, say from the P.D. also cause delay. Furthermore, if the issuing judge

12  does not vacate the Injunction, the appeal process takes even longer. (And will cost

13  plaintiff at least a few hundred dollars to pay for a certified transcript.) In my instant

14  case, I would have to appeal to the Arizona Court of Appeals. Given the delays in the

15  system, by the time that is heard, the Inunction could well have expired, making the

16  exercise pointless. Given all this, there is no viable remedy to challenge an Injunction,

17  despite appearances otherwise.

18       65.   In fact, because I am prevented from being in the Yavapai County Courthouse

19

20  ———————————————

21      [11] For example, if defendant Jones does not voluntarily recuse, an Arizona Rule
of Civil Procedure Rule 42(f) Motion for change of judge will be necessary. Mrs.

22  Bodine's divorce lawyer said in open court that Mrs. Bodine suffered from PTSD.
A.R.S. § 12-2202 says "Persons who are of unsound mind at the time they are called to

23  testify shall not be witnesses in a civil action," making a Rule 35 Motion for Mental

24  Examination necessary. I would want a Rule 52(a), Motion for Statement of Facts. Mr.
Bodine will have to move the court to be listed as Intervener, since Judge Jones has

25  violated Mr. Bodine's parental rights, in violation of the ARPOP Comment to Rule

26  1(F): "A protective order shall <u>never</u> be used as a way to modify, amend, affect or
diminish the parents' rights to custody, parenting time or access to children as

27  previously granted in a custody decree or a parenting time order from a court of
competent jurisdiction." As this is not a Protective Order, Judge Jones has no basis for

28  modifying father's rights here.

when Miss Thomas-Morgan is there, I am prevented from doing any legal research on the clerk's computers or the law library there, since I can never know when Thomas-Morgan will be in the building. Further, a strict reading of the Injunction says I cannot even face my accuser in court![12] As such I have no remedy at the State level. This is a de facto violation of due process.

66.    Even though I prevailed once in rescinding an unconstitutional Brady prohibition and should not have to fight the same battle again, because the Arizona Supreme Court has not changed its "Rules," Judge Jones can insist he's following the "law" if he abides by the Supreme's handbook. Plaintiff has been frustrated by the Supreme Court in seeking remedy.

67.    Given these several Constitutional deprivations of due process by way of Arizona Civil Injunction procedure, plaintiff will ask this court to declare Arizona's Injunction law, A.R.S. § 12-1809 patently unconstitutional. Since it is only judicial officers in Arizona who issue Civil Injunctions, defendants, and by extension, all those under them, are directly responsible for enforcing Injunctions. They can be enjoined by this court from issuing Injunctions by declaring the pertinent sections of the ARPOP unconstitutional.

**Meets the Standard of Review for TRO's**

68.    Quoting another federal judge's boilerplate, "the purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior

_____

[12]While the court may smile and think this is a trivial oversight, it is not. In the past, I have been charged criminally in Prescott for violating my previous Injunction when my attorney faxed a copy of an emergency Motion to Mrs. Bodine on my behalf. ("Criminal Faxing." Charge dismissed.) Similarly, I was told by JP Judge Arthur Markam that mailing copies of court filings to Mrs. Bodine—i.e., service, as required by Arizona Rules of Civil Procedure—would be violating his Injunction! Given the arbitrary and capricious nature of the authorities there, I dare not step into the Yavapai County courthouse when Miss Thomas-Morgan is there or she'll call the police and I'll be in jail. Such are the realities of life in the small town of Prescott.

1   to judgment. The standard for issuing a temporary restraining order is identical to the

2   standard for issuing a preliminary injunction."

3       69.   Me speaking: The status quo is that, for all this time until now, I have been

4   able to carry a firearm. It is a Constitutional right, both Federal and State. If I am

5   maimed or murdered because I cannot defend myself with a firearm, that would be an

6   irreparable loss of rights.

7       70.   "A party seeking injunctive relief under Fed.R.Civ.P. Rule 65 must show 'that

8   he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

9   absence of preliminary relief, that the balance of equities tips in his favor, and that an

10  injunction is in the public interest.'"

11      71.   Me: The defendants are acting absent law. They have no defense. Further,

12  even defendants have admitted some of my earlier, less developed arguments have

13  merit. How much more now with more counts against them? Therefore, I am likely to

14  succeed. Given the violence in the Phoenix Metroplex, I may suffer true irreparable

15  harm by not being able to defend myself with a firearm. Plaintiff has been the victim of

16  felony aggregated assault once. Since the Arizona Supreme Court has gone "rouge" and

17  is operating outside law, granting this Injunction will prevent the rights of other Arizona

18  residents from being similarly, unlawfully violated. Therefore, granting this TRO is in

19  the public interest.

20      72.   "Therefore, 'serious questions going to the merits' and a hardship balance that

21  tips sharply towards the plaintiff can support issuance of an injunction, so long as the

22  plaintiff also shows a likelihood of irreparable injury and that the injunction is in the

23  public interest."

24      73.   Defendants have no law on their side of the scale. Therefore, the balance can

25  only tip toward plaintiff. Defendants are acting outside law, so have no rights for this

26  court to consider. Defendants will suffer no hardship by being ordered to conform with

27  existing law.

28  **Declaratory and Injunctive Relief Allegations**

74.  An actual and substantial controversy exists between plaintiff and defendants as to their respective legal rights and duties. Plaintiff contends that I (or my loved ones) face an imminent threat of harm if the Civil Injunction against me is not overturned or modified, and that the Injunction violates the U.S. and Arizona Constitution in many ways. Defendants will continue to enforce their rule unless found to be unconstitutional and baseless by someone higher than they.

75.  In violating plaintiff's rights under the U.S. and Arizona Constitution, defendants have acted and will continue to act under color of law.

76.  Having already petitioned the Arizona Supreme Court, which admits there are merits to my argument but refuses to correct its error, plaintiff has no plain, speedy and adequate remedy at law, other than the relief requested in this complaint.

77.  Plaintiff is entitled to a declaration that a Second Amendment deprivation via the Arizona Supreme Court's *Arizona Rules of Protective Order Procedure* is unconstitutional on its face and is entitled to an Order immediately, preliminarily and permanently enjoining such.

78.  Similarly, plaintiff is entitled to a declaration that issuing an Injunction as a sole and proximate result of exercising protected speech is unconstitutional on its face and is entitled to an Order immediately, preliminarily and permanently enjoining such.

## CAUSES OF ACTION
### COUNT ONE
### 42 U.S.C. § 1983 - FIRST AMENDMENT
(Defendant Jones)

79.  The foregoing facts are repeated and incorporated as if fully set forth herein.

80.  The First Amendment of the U.S. Constitution says in part: "Congress shall make no law . . . abridging the freedom of speech . . ."

81.  By issuing a Civil Injunction solely on a complaint of something blogged, and considering the U.S. Supreme Court and Ninth Circuit's rulings cited previously, what

was blogged is "protected speech," Judge Jones abridged plaintiff's freedom of speech and thus violates plaintiff's First Amendment right to Free Speech.

## COUNT TWO

### 42 U.S.C. § 1983 - FIRST AMENDMENT

(Defendant Jones)

82. The foregoing facts are repeated and incorporated as if fully set forth herein.

83. The First Amendment of the U.S. Constitution says in part:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . .

84. Judge Jones issued an Injunction due to what was written on an Evangelical blog. By definition, evangelists "preach." We are not silent.

85. By issuing a Civil Injunction on a complaint of something blogged that is clearly religious in nature, Judge Jones is essentially prohibiting free exercise of religion and thus violates plaintiff's First Amendment right to freely exercise his (Evangelical) religion.

## COUNT THREE

### 42 U.S.C. § 1983 - SECOND AMENDMENT

(All defendants)

86. The foregoing facts are repeated and incorporated as if fully set forth herein.

87. The Second Amendment of the U.S. Constitution says in part: ". . . the right of the people to keep and bear Arms, shall not be infringed."

88. The U.S. Supreme Court has recently been affirmed that these rights accrue to individual citizens of the United States. (As opposed only to those in a "well-regulated Militia.")

89. By issuing an order to revoke plaintiff's right to keep and bear Arms absent a lawful basis, Judge Jones has violated plaintiff's Second Amendment right.

90. Likewise, by promulgating an internal Rule which has no lawful basis, the Justices of the Arizona Supreme Court are complicit in this violation.

## COUNT FOUR

### VIOLATION OF ARTICLE II, § 26 OF THE ARIZONA CONSTITUTION

(All defendants)

91.   The foregoing facts are repeated and incorporated as if fully set forth herein.

92.   Article 2, § 26 of the Arizona Constitution says in part,

> The right of the individual citizen to bear arms in defense of himself or the state shall not be impaired . . .

93.   By issuing an Injunction absent a lawful basis, defendant Jones unlawfully deprived plaintiff his constitutional right to bear arms in defense of himself.

94.   Likewise, by promulgating an internal Rule, which has no lawful basis, the Justices of the Arizona Supreme Court are complicit in this violation.

## COUNT FIVE

### VIOLATION OF ARTICLE III OF THE ARIZONA CONSTITUTION

(All defendants)

95.   The foregoing facts are repeated and incorporated as if fully set forth herein.

96.   Article 3 of the Arizona Constitution titled "Distribution of Powers" says:

> The powers of the government of the state of Arizona shall be divided into three separate departments, the legislative, the executive, and the judicial; and, except as provided in this constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

97.   There is no mention of firearms in A.R.S. § 12- 1809, the law the Arizona Legislature gave us and the court. Yet the Judicial branch (i.e., defendants), has essentially created a law on its own, by fiat, thus wrongly exercising the power of the Legislative branch and therefore, is in violation of the State Constitution.

## COUNT SIX

### VIOLATION OF ARTICLE II, § 8 OF THE ARIZONA CONSTITUTION

(Defendant Jones)

98.   The foregoing facts are repeated and incorporated as if fully set forth herein.

99.   Article 2, Section 8 of the Arizona Constitution titled "Right to privacy" says:

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

100. There are no requirements in Arizona law to register a used or gifted firearm or to report the purchase or ownership of ammunition.

101. Plaintiff was ordered by defendant to "surrender [firearms or ammunition] to the Yavapai County Sheriff's office," a government agency.

102. There is no mention verbiage in A.R.S. § 12- 1809 to sustain this order. Thus, by ordering plaintiff to surrender private property to a government agency, defendant disturbed my private affairs absent law.

## COUNT SEVEN

### 42 U.S.C. § 1983 - FOURTEENTH AMENDMENT

(Defendant Jones)

103. The foregoing facts are repeated and incorporated as if fully set forth herein.

104. The Fourteenth Amendment of the U.S. Constitution says in part, "nor shall any State deprive any person of life, liberty, or property, without due process of law;"

105. An ex parte action that deprives a person of property is, by definition, an action without due process of law. In this instant matter, when Judge Jones issued an ex parte Injunction against plaintiff, he deprived plaintiff of property (his firearm) solely on the word of one person.

106. Arizona's attempt to mitigate this constitutional violation by offering defendants in an Injunction a hearing within ten business days does not ameliorate this violation on its face. As with irreparable harm in Free Speech complaints, each day of a deprivation of rights is considered a count. How much more here?

107. Nor does Arizona's attempt to mitigate this constitutional violation provide time for a zealous defense, a necessary element of due process.

108. In short, Arizona's Civil Injunction law inherently deprives Arizona residents of due process should they be targeted.

## COUNT EIGHT

1    **VIOLATION OF ARTICLE II, § 4 OF THE ARIZONA CONSTITUTION**

2    (All defendants)

3    109. The foregoing facts are repeated and incorporated as if fully set forth herein.

4    110. Article 2, Section 4 of the Arizona Constitution titled "Due process of law"

5    says: "No person shall be deprived of life, liberty, or property without due process

6    of law."

7    111. As in Court Seven, an ex parte action that deprives a person of property is, by

8    definition, an action without due process of law. In this instant matter, when Judge Jones

9    issued an ex parte Injunction against plaintiff, he deprived plaintiff of property (his

10   firearm) solely on the word of one person.

11   112. Arizona's attempt to mitigate this constitutional violation by offering

12   defendants in an Injunction a hearing within ten business days does not ameliorate this

13   violation on its face.

14   113. Nor does Arizona's attempt to mitigate this constitutional violation provide

15   time for a zealous defense, a necessary element of due process of law.

16   **COUNT NINE**

17   **42 U.S.C. § 1983 - FOURTEENTH AMENDMENT**

18   (Defendant Jones)

19   114. The foregoing facts are repeated and incorporated as if fully set forth herein.

20   115. The Fourteenth Amendment of the U.S. Constitution says in part, "nor shall

21   any State . . . deny to any person within its jurisdiction the equal protection of the laws."

22   116. Civil Injunction law in Arizona is a one sided affair, both in theory and in

23   practice. It is almost always started ex parte.

24   117. As the Injunction against Michael Roth in Quartzsite, Arizona demonstrated, a

25   crazy man can tell a judge that someone called him a "turd," can cite that singular event

26   (even though Arizona law requires a series of acts), and can tell the judge that he (the

27   petitioner) is seeing a psychiatrist and suffers from PTSD (so according to Arizona law,

28   A.R.S. §12-2202, cannot give testimony—i.e., cannot legally swear out a petition.) Yet

1   the petitioner was still granted an Injunction against Michael Roth.

2       118.  In this instant matter, Miss Thomas-Morgan lied to Judge Jones by telling him

3   the blog *That Woman Jezebel* talked about her "death." Moreover, as her quotes around

4   the word "death" show, she knew full well that there was no real threat to her safety. Nor

5   does the blog mention her minor children. Yet Judge granted the Injunction for her and

6   her children anyway. He did not sanction Thomas-Morgan for perjury.

7       119.  There are no penalties to the petitioner for this or for falsifying a petition. Yet

8   in the Quartzsite example, Mr. Roth had to hire a lawyer at great expense to defend

9   himself from these baseless accusations.

10      120.  Arizona Injunction law does not provide for recovery of fees when

11  challenging a lying petitioner and a fraudulent Injunction.

12      121.  Therefore, a petitioner can come to the court with all sorts of wild and crazy

13  claims and suffer no harm. In contrast, anyone accused by a petitioner suffers immediate

14  and irreparable harm without recompense. Thus, there is no equal protection of the law

15  in Arizona Civil Injunctions.

16  <u>**COUNT TEN**</u>

17  <u>**42 U.S.C. § 1983 - FIFTH AMENDMENT**</u>

18  <u>**OR ALTERNATIVELY FOURTEENTH AMENDMENT**</u>

19  <u>**OR ALTERNATIVELY BOTH**</u>

20  (All defendants)

21      122.  The foregoing facts are repeated and incorporated as if fully set forth herein.

22      123.  The Fifth Amendment of the U.S. Constitution says in part, "nor shall any

23  person . . . be deprived of life, liberty, or property, without due process of law."

24      124.  The Fourteenth Amendment is like it.

25      125.  Arizona Injunction law does not provide for a firearm restriction in A.R.S. §

26  12-1809. It does not provide for "Brady Restrictions" on the defendants in an Injunction.

27  Nor does it provide for putting one's name on the federal NCIC database.

28      126.  The NCIC database, by definition, being federal, crosses state lines and moves

this matter from merely a state issue to a federal one, invoking the Fifth Amendment. This may invoke more violations of Constitutional rights of which pro se litigant is not yet aware.

127.  I have been prevented from owning a firearm in any state or any federal district, such state or district which might not recognize Arizona Civil Injunction law and/or may otherwise allow me to own a firearm. Defendants have, absent law, deprived plaintiff of owning property in any other state or federal district in the Union without due process.

## COUNT ELEVEN

### 42 U.S.C. § 1983 - FIRST AMENDMENT

(All defendants)

128.  The foregoing facts are repeated and incorporated as if fully set forth herein.

129.  The First Amendment of the U.S. Constitution says, in part,

> Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

130.  My name has been added to the NCIC database, absent any lawful basis.

131.  When this matter is settled and the unlawful weapon restriction is over, I can never know if my name has been cleared from the NCIC database.

132.  If, at some time, I have the misfortune to find that my name is on the database (say, during a traffic stop, when I have my firearm), I will suffer harm as a result.

133.  If my name is left in the NCIC database, I can never remove my name from the database.

134.  Thus, as a proximate result of unlawfully placing my name in the NCIC database, defendants have abridged this First Amendment right to redress for grievances and, in all probability, have caused permanent harm to plaintiff.

## COUNT TWELVE

### 42 U.S.C. § 1983 - FIRST AMENDMENT

(Defendant Jones)

135. The foregoing facts are repeated and incorporated as if fully set forth herein.

136. Judge Jones' Injunction that I am prohibited from attending First Baptist Church of Prescott, Arizona or that I am prohibited from being in the Yavapai County Courthouse when Melody Thomas-Morgan is there is overly broad and violates the First Amendment in two places. (Bear in mind that I can never know when she's there, so in effect, I am perpetually barred from these locations.)

137. As to First Baptist, this is an unconstitutional deprivation of my right of free exercise of religion. I can neither worship with those at First Baptist (if I wanted to), nor can I rebuke those at First Baptist, as I may be commanded to. (Per God's command in the Bible, Ephesians 5:11[13])

138. As to the Yavapai County Courthouse, there are currently two high profile criminal trials ongoing there. The right of the public's access to criminal trials was first articulated in *Richmond Newspapers, Inc. Virginia*, 448 U.S. 555 (1980) where the U.S. Supreme Court held that the First Amendment guarantees the public's right of access to criminal trials. Id at 580. I have been actively commenting on these two trials on *The [Prescott] Daily Courier* newspaper website. To prohibit this member of the pubic from attending is arguably a violation of my First Amendment right.

## COUNT THIRTEEN

### 42 U.S.C. § 1983 - FOURTEENTH AMENDMENT

(Defendant Jones)

139. The foregoing facts are repeated and incorporated as if fully set forth herein.

140. The Fourteenth Amendment arguably guarantees equal access to the courts under the due process clause.

141. Taking Judge Jones' Injunction in its most literal sense, that I am prohibited from being in the Yavapai Courthouse because I can never know when Thoms-Morgan is there.

---

[13] "Have nothing to do with the fruitless deeds of darkness, but rather expose them."

142. Therefore, I am barred from equal access to the court. Literally. I am prohibited from using the Yavapai County Superior Court Clerk's public access computer system to research the former Mrs. Bodine's divorce trial for cites that may relate to any defense I may make if I challenge the Civil Injunction.

143. Worse, I cannot even attend my own trial because Thomas-Morgan would be there and the Injunction clearly says I am to have no contact with Thomas-Morgan in the Yavapai County Courthouse.

## RELIEF SOUGHT

WHEREFORE, in light of the foregoing facts and arguments, plaintiff requests that:

A.      The court assume jurisdiction over this matter.

B1.      The court declare the instant Injunction Against Harassment against plaintiff unconstitutional because it chills plaintiff's several First Amendment rights.

B2.      The court issue an Order instructing Judge Jones to vacate the Injunction immediately for the above cause.

C1.      Even if the court grants Items B, which arguable renders this Item moot, or if it does not grant Items B: that the court declare the Injunction's prohibition against plaintiff possessing firearms unconstitutional.

C2.      If the court does not grant Items B, then the court issue an Order instructing Judge Jones to modify the Injunction immediately, removing the firearm restriction for the cause above.

D1.      That the court declare the Arizona Supreme Court's ARPOP Rule 6(E)(4)(e)(2) unconstitutional and issue an Order instructing the Justices to repeal Rule 6(E)(A)(e)(2) immediately and promulgate such change immediately to all Arizona judicial officers via the Supreme Court's emergency rule change process.

D2.      The court declare that, as currently practiced in Arizona, A.R.S. § 12-1809 Civil Injunctions Against Harassment is inherently unconstitutional (especially when granted ex parte) as it and inherently deprives defendants of

1    due process and/or a zealous defense and provides no remedy for abuse by

2    way of collecting attorney's fees for defendants.

D3.   The court enjoin Arizona Supreme court, and by extension, all judicial

officers in Arizona, from issuing said Injunctions.

D4.   If the court does not grant Items D2 & D3, then to prevent the unlawful

prohibition against firearms from happening again to my fellow citizens by

mistake, that the court instruct the Justices to issue two different, distinct

petition forms throughout the courts of Arizona: One form for Title 13

(Criminal) Orders of Protection which allows for weapon restriction, the

other for Title 12 (Civil) Injunctions which do not.

E1.   The court order Judge Jones to remove my name from the NCIC record

forthwith.

E2.   This court grants me an audit of my NCIC record (via the Federal Clerk's

office) in one month from the date of this court's final Order, to ensure that

my record has, in fact, been expunged for this instant and the previous

unconstitutional action against me. If my NCIC record has not been expunged

upon inspection, I request the court direct the controlling agency to expunge

my record and that I be allowed another audit in another month to ensure the

record has been expunged. To rinse and repeat as necessary.

F.    This court overlook technical defects and construe this complaint liberally for

this pro se litigant. I am sure I have made inartful errors. I may not have

connected all the dots, but I believe the dots are here. In light of the urgency

of this matter and the irreparable harm that can come to me and my loved

ones by delay, I ask the court to overlook technical errors at this juncture

which might otherwise preclude issuing an Emergency TRO.[14] I will amend

---

[14] Quoting Ninth Circuit Judge Norris in *Ferdik v. Bonzelet* , 963 F.2d 1258, *1263, "27 Federal Procedure (Lawyer's Edition) § 62:93 at 256 says, 'a court is not permitted to impose a sanction as drastic as a judgement of dismissal in order to force a

this complaint to cure defects as soon as possible upon guidance from the court.

SUBMITTED this __4__ day of October, 2011

By: _P. Meeke Palmer_
P. Michael Palmer
18402 N. 19th Ave., #109
Phoenix, AZ 85023
602-513-3738

### Rule 65(b)(1)(B) Certification

I, Peter Michael Palmer, acting as my own attorney, certify that, as a pro se with IFP status, given the immediacy of this action, I do not have the resources to serve all the defendants in a timely manner for a preliminary injunction. In fact, all my resources have been spent the last four days researching and preparing this complaint.

Pursuant to Fed.R.Civ.P. 4(c)(3), IFP plaintiff requests the court order that service be made on all defendants by a United States marshal or deputy marshal or by a person especially appointed by the court.

If the court denies the Rule 4(c)(3) request, then good cause exists for me to request the court extend the Temporary Injunction for another 14 days (28 days total), pursuant to Fed.R.Civ.P. 65(b)(2), to allow time for friends to accomplish service on my behalf.

Since it's black letter law from a plain reading of A.R.S. § 12-1809 that defendants are acting absent law, and since even defendants have admitted some of my earlier, less developed arguments have merit, an extension of time for Notice cannot cause harm to defendants.

___

legally artistic pleading.'

# **VERIFICATION**

I, Peter M. Palmer, state under penalty of perjury that the foregoing Complaint for

Injunctive and Declaratory Relief is true and correct.

P. "Mike" Palmer

Signed this _____4_____ day of October 2011.


State of Arizona
County of Maricopa


On ____4____ of October 2011, Peter M. Palmer personally appeared to me and proved to me on
the basis of satisfactory evidence to be the person whose name is subscribed to this
instrument. By his signature on this instrument, he executed same.



STATE OF **ARIZONA**
COUNTY OF **MARICOPA**
This instrument was acknowledged before me
This 4 day of Oct , 20 11 ,
In witness whereof I herewith set my hand
and official seal.
NOTARY PUBLIC

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
SUSAN N. CULPEPPER
My Appointment Expires 10/19/11

# EXHIBIT 1

PRESCOTT JUSTICE COURT    120 S Cortez St. Room 103         Prescott AZ 86303-4747 (928) 771-3300

# INJUNCTION AGAINST HARASSMENT

[ ] Amended Order

[ ] Dating relationship, no law enforcement service fee

Case No. 20110410J

Court ORI No. _____

County   YAVAPAI   State AZ

Former Case No. _____

**PLAINTIFF**

MELODY          THOMAS-MORGAN

First      Middle         Last

**PLAINTIFF IDENTIFIERS**

6/24/1960

Date of Birth of Plaintiff

And/or on behalf of minor family member(s) and other Protected Person(s): (List name and DOB.)

JOHN BODINE 12/4/1998                    WILLIAM BODINE 4/23/1993

ALLEGRA BODINE 5/10/1996

**v.**

**DEFENDANT**

PETER    MICHAEL    PALMER

First      Middle         Last

Defendant/Plaintiff Relationship: _____
Other (Code 99)

Defendant's Address: _____
PO BOX 5564
GLENDALE AZ 85312

**CAUTION:** [ ] Weapon Alleged in Petition
[ ] Estimated Date of Birth

**DEFENDANT IDENTIFIERS**

| SEX | RACE | DOB | HT | WT |
|-----|------|-----|-----|-----|
| M | W | Unknown | 5'9 | 170 |
| EYES | HAIR | *Arizona Prohibits Release* | | |
| | UNK | *of Social Security Numbers* | | |
| DRIVER'S LICENSE # | STATE | EXP DATE | | |
| | AZ | | | |

Distinguishing Features/Alias _____

**WARNINGS TO DEFENDANT:** This Order shall be enforced, even without registration, by the courts of any state. the District of Columbia, any U.S. Territory, and may be enforced by Tribal Lands (18 U.S.C. § 2265). Crossing state, territorial, or tribal boundaries to violate this Order may result in federal imprisonment (18 U.S.C. § 2262). Federal law provides penalties for possessing, transporting, shipping, or receiving any firearm or ammunition (18 U.S.C. § 922(g)(8)). Only the Court, in writing, can change this Order. This Order is effective for one year from date of service.
**VERIFY VALIDITY (call Holder of Record):**

YAVAPAI COUNTY SHERIFF'S OFFICE (928) 771-3260

## THE COURT HEREBY FINDS:

That it has jurisdiction over the parties and subject matter.
**Additional findings of this Order and warnings are set forth on the next page(s).**
**THE COURT, FINDING REASONABLE CAUSE, HEREBY ORDERS:**
NO CRIMES. Defendant shall not commit any crimes against Plaintiff or Protected Person(s).
[X] **NO CONTACT.** Defendant shall have no contact with **Plaintiff** except through attorneys, legal process, court hearings, and as checked: [ ] Phone [ ] Email/Fax [ ] Mail [ ] Other: _____
[X] **NO CONTACT.** Defendant shall have no contact with **Protected Person(s)** except through attorneys. legal process. court hearings. and as checked: [ ] Phone [ ] Email/Fax [ ] Mail [ ] Other: _____
**THE COURT FURTHER ORDERS:**
**PROTECTED LOCATIONS.** Defendant shall not go to or near the Plaintiff's or other Protected Person's:

[X] Residence (leave blank if confidential): 1828 Meadow Brook Rd. Prescott AZ 86303.

Effective: January 2007

Prescott Justice Court                    Docket: 20110410J                                         Page 2
[X] School / Other: <u>Christian Academy, 148 S Marina St, Prescott AZ 86301.</u>

[X] **FIREARMS.** Because Defendant poses a credible threat of bodily injury to Plaintiff or Protected Person(s),
Defendant shall not possess, receive, or purchase firearms or ammunition and shall surrender same within 24 hours
of service to: <u>Yavapai County Sheriff's office</u>

**OTHER ORDERS:** <u>Defendant shall have no contact with Plaintiff at First Babtist and/or the The Yavapai County</u>
<u>Courthouse. Defendant shall have no contact with the protected persons at Christian Academy, First Babtist Church,</u>
<u>or any other place..</u>

<u>Apr. 11, 2011</u>                                                                              Kenton D. Jones
Date                          Judical Officer                                                    Printed Name

---

# WARNING

This is an official Court Order. If you disobey this Order, you will be subject to arrest and prosecution for the crime of
interfering with judicial proceedings and any other crime you may have committed in disobeying this Order.

**ADDITIONAL WARNINGS TO DEFENDANT:** Violations of this Order should be reported to a law enforcement
agency, not the Court. Both parties must notify this Court if an action for dissolution (divorce), separation, annulment or
paternity/maternity is filed. This is NOT a parenting time (visitation) or custody order. You must file those requests
separately in Superior Court. If you disagree with this Order, you have the right to request a hearing which will be held
within 5 to 10 business days after your written request has been filed in the Court that issued this Order. Nothing the
Plaintiff does can stop, change, or undo this Order without the Court's written approval. You must appear in Court to ask
a judge to modify (change) or quash (dismiss) this Order. **Even if the Plaintiff initiates contact, you could be arrested
and prosecuted for violating this protective order. If you do not want the Plaintiff to contact you, you have the right
to request a protective order against the Plaintiff.**

# EXHIBIT 2



| All Courts in Arizona/NCIC#/DPS# | Address | City, Arizona  Zip Code | Telephone Number |
|---|---|---|---|

*Melody Thomas-Morga*   *Palmer,*     Case No. _____

**Plaintiff / Plaintiff Employer**         **Defendant**    *Peter Michael*        **PETITION for**
(Work Injunction ONLY)
Birth Date: *6-24-60*                                        [ ] Order of Protection
                              Address                       [X] Injunction Against Harassment
                                                            [ ] Workplace Injunction

Agent's Name                    City, State, Zip Code, Phone
(Work Injunction ONLY)

**DIRECTIONS: Please read the Plaintiff's Guide Sheet before filling out this form.**

1.  Defendant/Plaintiff Relationship: [ ] Married now or in the past [ ] Live together now or lived together in the past
    [ ] Child in common [ ] One of us pregnant by the other [ ] Related (Parent, In-law, Brother, Sister, Grandparent)
    [ ] Romantic or sexual relationship (current or previous) [ ] Dating but not a romantic or sexual relationship
    [X] Other: *He is my ex-husbands spiritual mentor/friend!?*

2.  [ ] If checked, there is a pending action involving maternity, paternity, annulment, legal separation, dissolution,
    custody, parenting time or support in _____ Superior Court.
    Case #: _____.                    (COUNTY)

3.  Have you or the Defendant been charged or arrested for domestic violence OR requested a Protective Order?
    [ ] Yes [ ] No [ ] Not sure
    If yes or not sure, explain: *I requested and received ~~with~~ Injunction*
    *Against Harassment in the past against Mr. Palmer. Those Orders*
4.  I need a Court Order because: (PRINT both the date(s) and briefly what happened): *were granted and*
                                                                                    *upheld by 4 judges.*

| Date(s) | Describe what happened (Attach additional paper if necessary – Do not write on back) |
|---|---|
| | *1. Please see attached sheet.* |
| | *2. The City Prosecutor and the Prescott Police Dpt* |
| | *have recommended that I seek those Orders* |
| | *because of the on-going nature of Mr. Palmers* |
| | *harassment (esp. w/regards to my "death")* |

**Melody Thomas-Morgan Bodine**                                                    **April 8, 2011**
      **fka  Melody Anne Bodine**

I come before this Court because again, Peter Michael Palmer (aka Mike Palmer) about my "death". Previously the Court granted me an Injunction against Harassment for Mike Palmer because of a sympathy card (for my death, from a "self-inflicted head wound") that Mr. Palmer sent me (see attached) as well as continual letters full of libel against me, sent to my pastor and family members (Case #: 20081217J). Orders were granted and upheld by four judges. (Related case: #P-1300-CV-20091145).

Again, currently, Mr. Palmer is talking about my "death". (See attached: several posts from Mr. Palmer's Blog; dated throughout March 2011).

I am also seeking protection for my three minor children who Mr. Palmer makes sexual references to in his blog(thatwomanjezebel.blogspot.com). It is unacceptable for Mr. Palmer to talk sexually about minor children. It is also unacceptable for Mr. Palmer to spread lies about me, and/or my children (of majority and minors).

While Judge Mackey allowed my legal name to be changed, most people still know me as Melody Bodine AND our children still have their last name as "Bodine". Thus, if my children's names are "googled", they, or any of their friends can be linked back to Mr. Palmer's outrageous blog.

I ask that this Court take a stand for me, and these children.  Mr. Palmer has exhibited obsessive behavior regarding things of a sexual nature as well as death, violent death. (See previous Court case/testimony).

He is close friends and a spiritual mentor to my ex-husband and the children's father. Their relationship is undefined.  I ask that I and these children be protected from this man displaying obviously disturbed behavior. I have contacted my ex-husband regarding his friend's/spiritual mentor's behavior, and to-date, have received no response.  Most references to me and my children have been given to Mr. Palmer by my ex-husband.

In the past, Mr. Palmer, when visiting our home (pre-Dissolution), would oftentimes warn me not to make any fast moves around him, because he might "accidentally" go into martial arts mode and do a quick chop to my neck and kill me.  He also told women in our church that women breast feed for sexual pleasure (personally, never met a one); and told women in the congregation that they should not wear deodorant because it could cause breast cancer.  Obviously, this is NOT normal behavior.

        Mr. Palmer's harassment of me is continuous and must end.  None of what he says about me is true. And what he does say about me and my children is harmful and fear -producing. Judge Hamm stated the following in open court:

        "In reviewing the letters written..honestly, you're frightening. "(Transcript, pg. 66)
        "Sending a letter to the son-in-law, you certainly know that that's to her." (Transcript, pg. 66)
        "Given your statement about First Amendment, the right to free speech and right to express your opinion, I can't help but think you'd also expose that opinion to these minor children (Transcript, pg. 66)
        "There are restrictions on First Amendment freedom of speech and libel, slander are a part of that." (Transcript, pg. 65)

Please take a stand and say "no more of this", to Mr. Palmer on my behalf on behalf of my children.

That woman Jezebel                                    http://thatwomanjezebel.blogspot.com/

Share   Report Abuse   Next Blog                          Create Blog   Sign In

# That woman Jezebel

On the life... err, death and death of Mrs. Melody Anne Bodine, 6/25/1982 - 4/21/2009

Spiritually speaking-and even legally speaking-Mrs. Bodine is no longer with us. Spiritually speaking, she never was with us. We now know her "life" was an illusion. A few thoughts on her passing to help fellow Christians discern.

## Sex in the City (of Scottsdale)



I still can't get over the amazing parallels (Brian) about his ex-wife and my friend's late wife, Mrs. Bodine. Specifically, Brian's wife decided to commit adultery when she decided to divorce her husband. Women, is this typical? Never having been married myself, and never having known anyone as a long time friend who divorced before, I'm new to all this and still shocked. So you tell me.

Let me tell you a story and you tell me what you think happened. Let's say a couple is having marital problems and, right or not, they decide to try so-called "marriage counseling." (It's not right. The remedy is to confess your sins to each other, get your eyes back on God and move forward. But that assumes you're both Christian.)

And let's say that one of the things the marriage counselor draws out of the husband is that, deep down, he doesn't really trust his wife. (I don't know if that was always the case or recent as their problems rose to the surface.)

And let's say that his wife, upon hearing that, goes absolutely bonkers. She drove home like a wild woman, almost suicidal, at about 100 miles an hour. See, she believes she's a "trustworthy woman." (Actually, I would learn later that she never really trusted him, always worried about money, so maybe there's some " " going on here? In any event, it's a pride problem. The proper response would have been to ask "Why don't you trust me?" listen to the answer, and try to repair the perceived or real problem.)

When they get home (without killing anyone on the road thankfully) she takes some " " (2nd definition) and runs away for a few days over a weekend, not telling anyone where she's going, leaving everyone (dad and the kids) in a lurch.

It turns out she ran to a resort in plushy Scottsdale, Arizona.

Now, what do you suppose this raging woman did that weekend? Her husband said he didn't trust her, huh? Well, maybe she'll give him good reason not to trust her.

After she came back, she immediately cut her hair short. Could be Providentially . (i.e., ) And she wore these goofy baseball-like caps for a long time. Shortly after that, she filed papers against her husband, got the older kids to swear out false testimonies about their dad, convinced him to move out of the house,

### Navigating this blog

The format on this blog will be one page at a time, in chronological order. Navigation coming soon as content demands.

### Attention publishers!

Interested in publishing this story?

Told from a fundamental Christian perspective with heavy reliance on the Bible, the sad story of a foolish woman, per                , as told by a third party eye witness, a long time friend of the family.

While nothing can be done to stop ungodly women from breaking their vows and leaving their husbands             ), perhaps telling this story can mitigate the sin damage to the children.

Please leave a comment with your official contact info if interested.

4/4/11 7:28 PM

# EXHIBIT 3

# O'LEARY EATON, P.L.L.C.

## ATTORNEYS-AT-LAW

115 N. GROVE AVENUE
PRESCOTT, ARIZONA 86301

WILLIAM J. O'LEARY, P.C.*
JAY R. EATON, P.C. *
MICHAEL P. THIEME

TELEPHONE:
(928) 445-1856
FACSIMILE:
(928) 445-1782

* A PROFESSIONAL CORPORATION

## VIA REGULAR & CERTIFIED MAIL

September 16, 2011

PETER MICHAEL PALMER
18402 N. 19th Avenue
Phoenix, AZ 85023

RE: Melody Thomas Morgan
Our File No.: 30280-1

Dear Mr. Palmer:

Please be advised that we represent Melody Thomas-Morgan, who is the target of your musings in the "That Woman Jezebel" blog on Blogspot.com.

While you certainly have the right to blog about your various fixations with Ms. Thomas-Morgan, your blog titled "Mom obsesses about money, murders son. Will history repeat itself?" crosses the line. In this blog, you compare Ms. Thomas-Morgan to Andrea Yates and one can draw the strong inference that, like Andrea Yates, Ms. Thomas-Morgan may bring death and destruction to those in her care. The blog states that your "…alarm bells are going off…" given the fact that Ms. Thomas-Morgan is involved in senior care through her business venture known as "Melody's Vital Living for Seniors". You also provide a link in your blog to Ms. Thomas-Morgan and her business at the LinkedIn.com website.

Your blog reference and website link to Ms. Thomas–Morgan and her senior care business constitutes tortious interference with her business relationships, as you have intentionally provided false and damaging claims and accusations against Ms. Thomas-Morgan's reputation. This damaging and false information may cause a third party who would have engaged Ms. Thomas-Morgan as a senior caregiver to not enter into a business relationship with her. It is clear from the totality of your blogs that you intentionally desire to harm Ms. Thomas-Morgan's reputation and integrity in every aspect of her life. However, the law protects an individual's right to earn a living from malicious attacks and conduct such as yours.

PETER MICHAEL PALMER
September 16, 2011

Ms. Thomas-Morgan has been injured economically by your false claims and accusations which imply she may harm an individual in her care. You have created mental distress and have done it intentionally and with malice.

This is a formal demand that you immediately remove all references in your blog to Ms. Thomas-Morgan's business and all accusations which imply Ms. Thomas is a danger to any human being in her care. Additionally, remove all links to Ms. Thomas-Morgan's LinkedIn.com profile.

In the event that you choose to ignore this demand, Ms. Thomas-Morgan will pursue her civil legal and equitable remedies which include an award of economic damages, punitive damages, injunctive relief and attorney's fees.

After reading through your many blogs concerning our client, may I also respectfully suggest that you write a blog concerning the meaning of the Gospel of John 8:7, and how you might somehow be exempt from this scripture.

Sincerely,

Jay R. Eaton

cc: Melody Thomas-Morgan

# EXHIBIT 4

PRESCOTT JUSTICE COURT 1303 AZ 013063J    Room 103, Yavapai County Courthouse    Prescott AZ 86301 (928) 771-3300

Melody Bodine
Plaintiff
Birthdate:
V.
Peter Michael Palmer
Defendant

Case No.

300812.17

**HEARING ORDER**

**Injunction Against Harassment**

IH Issue Date
(mm/dd/ccyy)

**Prior to hearing:**

[ ] The requested relief is denied. Date requested:   __/__/____.

[ ] Based on request, this matter is set for hearing:

Date: __/__/____                    Location: _____

Time: _____ a.m./p.m.

Parties are to present testimony and evidence whether the Court should continue, revoke or modify the protective order listed above.

[ ] The Court cancels the hearing set for   __/__/____

[ ] On Plaintiffs motion, the Court dismisses the protective order listed above.

**At time of hearing:**

Plaintiff:    [X] Appeared [ ] Failed to Appear but did not have Notice [ ] Failed to Appear but had Notice

Defendant:  [X] Appeared [ ] Failed to Appear but did not have Notice [ ] Failed to Appear but had Notice

[ ] The hearing previously set is canceled.

[ ] The Court dismisses the protective order listed above.

[X] The protective order listed above remains in effect. [X] Brady applies.

[ ] As attached, the Court modifies the protective order listed above. [ ] Brady applies.

4-9-09
Date

Mark E. Hamm
Judicial Officer

**CERTIFICATE OF TRANSMITTAL**

Copy mailed/delivered to [X] Plaintiff [X] Defendant [ ] Sheriff on 4/9/09 by J.C. Thomson
(Date)

# EXHIBIT 5

12-1809. Injunction against harassment; petition; venue; fees; notices; enforcement; definition

A. A person may file a verified petition with a magistrate, justice of the peace or superior court judge for an injunction prohibiting harassment. If the person is a minor, the parent, legal guardian or person who has legal custody of the minor shall file the petition unless the court determines otherwise. The petition shall name the parent, guardian or custodian as the plaintiff, and the minor is a specifically designated person for the purposes of subsection F of this section. If a person is either temporarily or permanently unable to request an injunction, a third party may request an injunction on behalf of the plaintiff. After the request, the judicial officer shall determine if the third party is an appropriate requesting party for the plaintiff. Notwithstanding the location of the plaintiff or defendant, any court in this state may issue or enforce an injunction against harassment.

B. An injunction against harassment shall not be granted:

1. Unless the party who requests the injunction files a written verified petition for injunction.

2. Against a person who is less than twelve years of age unless the injunction is granted by the juvenile division of the superior court.

3. Against more than one defendant.

C. The petition shall state all of the following:

1. The name of the plaintiff. The plaintiff's address shall be disclosed to the court for purposes of service. If the address of the plaintiff is unknown to the defendant, the plaintiff may request that the address be protected. On the plaintiff's request, the address shall not be listed on the petition. Whether the court issues an injunction against harassment, the protected address shall be maintained in a separate document or automated database and is not subject to release or disclosure by the court or any form of public access except as ordered by the court.

2. The name and address, if known, of the defendant.

3. A specific statement showing events and dates of the acts constituting the alleged harassment.

4. The name of the court in which there was or is any prior or pending proceeding or order concerning the conduct that is sought to be restrained.

5. The relief requested.

D. A fee shall not be charged for filing a petition under this section. Fees for service of process may be deferred or waived under any rule or law applicable to civil actions, except that fees for service of process shall not be charged if the petition arises out of a dating relationship. The court shall advise a plaintiff that the plaintiff may be eligible for the deferral or waiver of these fees at the time the plaintiff files a petition. The court shall not require the petitioner to perform community restitution as a condition of the waiver or deferral of fees for service of process. A law enforcement agency or constable shall not require the advance payment of fees for service of process of injunctions against harassment. If the court does not waive the fees, the serving agency may assess the actual fees against the plaintiff. On request of the plaintiff, an injunction against harassment that is issued by a municipal court may be served by the

police agency for that city if the defendant can be served within the city. If the defendant cannot be served within the city, the police agency in the city in which the defendant can be served may serve the injunction. On request of the plaintiff, each injunction against harassment that is issued by a justice of the peace shall be served by the constable for that jurisdiction if the defendant can be served within the jurisdiction. If the defendant cannot be served within that jurisdiction, the constable in the jurisdiction in which the defendant can be served shall serve the injunction. On request of the plaintiff, an injunction against harassment that is issued by a superior court judge or commissioner may be served by the sheriff of the county. If the defendant cannot be served within that jurisdiction, the sheriff in the jurisdiction in which the defendant can be served may serve the order. The court shall provide, without charge, forms for purposes of this section for assisting parties without counsel.

E. The court shall review the petition, any other pleadings on file and any evidence offered by the plaintiff, including any evidence of harassment by electronic contact or communication, to determine whether the injunction requested should issue without a further hearing. Rules 65(a)(1) and 65(e) of the Arizona rules of civil procedure do not apply to injunctions that are requested pursuant to this section. If the court finds reasonable evidence of harassment of the plaintiff by the defendant during the year preceding the filing of the petition or that good cause exists to believe that great or irreparable harm would result to the plaintiff if the injunction is not granted before the defendant or the defendant's attorney can be heard in opposition and the court finds specific facts attesting to the plaintiff's efforts to give notice to the defendant or reasons supporting the plaintiff's claim that notice should not be given, the court shall issue an injunction as provided for in subsection F of this section. If the court denies the requested relief, it may schedule a further hearing within ten days with reasonable notice to the defendant. For the purposes of determining the one year period, any time that the defendant has been incarcerated or out of this state shall not be counted.

F. If the court issues an injunction, the court may do any of the following:

1. Enjoin the defendant from committing a violation of one or more acts of harassment.

2. Restrain the defendant from contacting the plaintiff or other specifically designated persons and from coming near the residence, place of employment or school of the plaintiff or other specifically designated locations or persons.

3. Grant relief necessary for the protection of the alleged victim and other specifically designated persons proper under the circumstances.

G. The court shall not grant a mutual injunction against harassment. If opposing parties separately file verified petitions for an injunction against harassment, the courts after consultation between the judicial officers involved may consolidate the petitions of the opposing parties for hearing. This does not prohibit a court from issuing cross injunctions against harassment.

H. At any time during the period during which the injunction is in effect, the defendant is entitled to one hearing on written request. No fee may be charged for requesting a hearing. A hearing that is requested by a defendant shall be held within ten days from the date requested unless the court finds compelling reasons to continue the hearing. The hearing shall be held at the earliest possible time. An ex parte injunction that is issued under this section shall state on its face that the defendant is entitled to a hearing on written request and shall include the name and address of the judicial office where the request may be filed. After the hearing, the court may modify, quash or continue the injunction.

I. The injunction shall include the following statement:

Warning

This is an official court order. If you disobey this order, you may be arrested and prosecuted for the crime of interfering with judicial proceedings and any other crime you may have committed in disobeying this order.

J. A copy of the petition and the injunction shall be served on the defendant within one year from the date the injunction is signed. An injunction that is not served on the defendant within one year expires. The injunction is effective on the defendant on service of a copy of the injunction and petition and expires one year after service on the defendant. A modified injunction is effective upon service and expires one year after service of the initial injunction and petition.

K. Each affidavit, acceptance or return of service shall be promptly filed with the clerk of the issuing court. This filing shall be completed in person, shall be made by fax or shall be postmarked, if sent by mail, no later than the end of the seventh court business day after the date of service. If the filing is made by fax, the original affidavit, acceptance or return of service shall be promptly filed with the court. Within twenty-four hours after the affidavit, acceptance or return of service has been filed, excluding weekends and holidays, the court from which the injunction or any modified injunction was issued shall forward to the sheriff of the county in which the court is located a copy of the injunction and a copy of the affidavit or certificate of service of process or acceptance of service. On receiving these copies, the sheriff shall register the injunction. Registration of an injunction means that a copy of the injunction and a copy of the affidavit or certificate of service of process or acceptance of service have been received by the sheriff's office. The sheriff shall maintain a central repository for injunctions so that the existence and validity of the injunctions can be easily verified. The effectiveness of an injunction does not depend on its registration, and for enforcement purposes pursuant to section 13-2810, a copy of an injunction, whether or not registered, is presumed to be a valid existing order of the court for a period of one year from the date of service of the injunction on the defendant.

L. A peace officer, with or without a warrant, may arrest a person if the peace officer has probable cause to believe that the person has violated section 13-2810 by disobeying or resisting an injunction that is issued pursuant to this section, whether or not the violation occurred in the presence of the officer. The provisions for release under section 13-3903 do not apply to an arrest made pursuant to this subsection. A person who is arrested pursuant to this subsection may be released from custody in accordance with the Arizona rules of criminal procedure or any other applicable statute. An order for release, with or without an appearance bond, shall include pretrial release conditions that are necessary to provide for the protection of the alleged victim and other specifically designated persons and may provide for additional conditions that the court deems appropriate, including participation in any counseling programs available to the defendant.

M. If a peace officer responds to a call alleging that harassment has been or may be committed, the officer shall inform in writing any alleged or potential victim of the procedures and resources available for the protection of the victim including:

1. An injunction pursuant to this section.

2. The emergency telephone number for the local police agency.

3. Telephone numbers for emergency services in the local community.

N. The remedies provided in this section for enforcement of the orders of the court are in addition to any other civil and criminal remedies available. The municipal court and the justice court may hear and decide all matters arising pursuant to this section. After a hearing with notice to the affected party, the court may enter an order requiring any party to pay the costs of the action, including reasonable attorney fees, if any. An order that is entered by a justice court or municipal court after a hearing pursuant to this section may be appealed to the superior court as provided in title 22, chapter 2, article 4, section 22-425, subsection B and the superior court rules of civil appellate procedure without regard to an amount in controversy. No fee may be charged to either party for filing an appeal.

O. A peace officer who makes an arrest pursuant to this section is not civilly or criminally liable for the arrest if the officer acts on probable cause and without malice. A peace officer is not civilly liable for noncompliance with subsection M of this section.

P. This section does not apply to preliminary injunctions issued pursuant to an action for dissolution of marriage or legal separation or for protective orders against domestic violence.

Q. In addition to the persons who are authorized to serve process pursuant to rule 4(d), Arizona rules of civil procedure, a peace officer or a correctional officer as defined in section 41-1661 who is acting in the officer's official capacity may serve an injunction against harassment that is issued pursuant to this section.

R. For the purposes of this section, "harassment" means a series of acts over any period of time that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person and serves no legitimate purpose. Harassment includes unlawful picketing, trespassory assembly, unlawful mass assembly, concerted interference with lawful exercise of business activity and engaging in a secondary boycott as defined in section 23-1321 and defamation in violation of section 23-1325.

# EXHIBIT 6

IN THE JUSTICE COURT, PRESCOTT PRECINCT
COUNTY OF YAVAPAI, STATE OF ARIZONA
120 S Cortez St, Room 103
Prescott AZ 86303-4747 Ph: (928) 771-3300

Case Number 20081217J

JUSTICE CIVIL
Injunction Against Harassment

---

Plaintiff 1:
MELODY A. BODINE

Plaintiff 2:
WILLIAM BODINE

Plaintiff 3:
ALLEGRA BODINE

Plaintiff 4:
JOHN BODINE

Defendant :
PETER MICHAEL PALMER
708 W. DEER VALLEY RD
PHOENIX AZ 85007

Date: 5/20/2009          Clerk: Christy Awtrey-Tieman          Hon Judge: Mary Hamm

## NATURE OF PROCEEDINGS

Date of Hearing or Action 5/20/2009.
The Court having received an Emergency Petition to Rescind the Brady Disqualification, now comes the court
and Grants this petition as Brady disqualification does not apply to this case.
IT IS ORDERED rescinding the Notice of Brady Disqualification order previously issued in this court on April
9, 2009.


THESE PROCEEDINGS WERE NOT ELECTRONICALLY RECORDED.

DONE THIS 20 day of May, 2009 IN OFFICE .

# EXHIBIT 7

# ARIZONA RULES OF PROTECTIVE ORDER PROCEDURE

Approved September 5, 2007 by Arizona Supreme Court
Effective January 1, 2008
Amended Sept. 16, 2008, effective Sept. 26, 2008
Adopted on a permanent basis effective Sept. 3, 2009
Amended Aug. 31, 2009, effective Sept. 26, 2009
Current with amendments as of Nov. 18, 2009

## Rule 1.  General Administration

### A.  Applicability of Rules

1.  *Scope of these Rules.* These rules govern the procedures in any Arizona court in all cases related to the issuance of an Order of Protection *See* A.R.S. § 13-3602, an Emergency Order of Protection *See* A.R.S. § 13-3624(C), an Injunction Against Harassment *See* A.R.S. § 12-1809, and an Injunction Against Workplace Harassment *See* A.R.S. § 12-1810.

2.  *Applicability of Other Rules.* To the extent not inconsistent with these rules, the *Arizona Rules of Family Law Procedure* (ARFLP) shall apply to protective order matters heard in conjunction with pending family law cases. In all other cases, the *Arizona Rules of Civil Procedure* shall apply when not inconsistent with these rules.

### B.  Definitions

1.  *Parties*

  a.  *Defendant.*  The defendant is the person against whom the plaintiff or other appropriate party is seeking protection.

  b.  *Plaintiff and Other Appropriate Requesting Parties.*

  1)  *Plaintiff.*  The plaintiff is the person or other appropriate requesting party who files the petition for a protective order.

  2)  *Other Appropriate Requesting Parties.*

  a)  *Parent, Legal Guardian, or Legal Custodian of Minor.* If the person in need of protection is a minor, then the parent, legal guardian or person who has legal custody of the minor shall file the petition unless the court determines otherwise.  The petition shall name the parent, guardian, or custodian as the plaintiff, and the minor as a specifically designated person.

  b)  *Third Party on Behalf of a Person Unable to Request an Order.* If a person is either temporarily or permanently unable to request an order, a third party may request an order of protection on behalf of the plaintiff. After the request, the judicial officer shall determine if the third party is an appropriate requesting party for the plaintiff.  *See* A.R.S. § 13-3602(A).

of the plaintiff or other designated persons, if there is reasonable cause to believe physical harm may otherwise result.

d. Prohibit the defendant from possessing or purchasing a firearm and ammunition for the duration of the order, upon a finding that the defendant may inflict bodily injury or death on the plaintiff. *See* A.R.S. § 13-3624(D).

4. *Service of an Emergency Order of Protection.*

a. The law enforcement officer who receives verbal authorization for an Emergency Order of Protection shall complete and sign the emergency order as instructed by the judicial officer. The law enforcement officer shall then give a copy of the Emergency Order of Protection to the plaintiff or appropriate third party.

b. The law enforcement officer shall arrange for service upon the defendant. After service of the Emergency Order of Protection on the defendant, the law enforcement officer shall file a certificate of service with the court and verbally notify the sheriff's office that a judicial officer has issued an Emergency Order of Protection. *See* A.R.S. § 13-3624(F).

5. *Duration.* An emergency order expires at the close of the next day of judicial business following the day of issuance, unless otherwise continued by the court. *See* A.R.S. § 13-3624(E). A petition for an Order of Protection may be filed the following business day.

**E. Injunction Against Harassment.** The judicial officer shall conduct an individual hearing with each plaintiff who requests an Injunction Against Harassment.

1. *Contents of Petition.* The petition shall allege a series of specific acts of harassment and the dates of occurrence. A series of acts means at least two events. *See* A.R.S. § 12-1809(C).

2. *Petition Verification.* A plaintiff must sign and swear or affirm to the truth of the petition before a judicial officer or other person authorized to administer an oath.

3. *Petition Review.* A judicial officer shall review the petition, any other pleadings on file and any evidence offered by the plaintiff, including any evidence of harassment by electronic contact or communication, to determine whether the order requested shall be issued *ex parte*.

4. *Issuance of Injunction Against Harassment*

a. *Findings Required.* The judicial officer shall issue an Injunction Against Harassment if there is a finding of reasonable evidence of harassment of the plaintiff by the defendant during the year preceding the filing or that good cause exists to believe that great or irreparable harm would result to the plaintiff if the injunction is not granted before the defendant or the defendant's attorney can be heard in opposition. *See* A.R.S. § 12-1809(E).

1)  If the judicial officer is going to issue the Injunction Against Harassment at the *ex parte* hearing, the judicial officer must find specific facts attesting to the plaintiff's efforts to give notice to the defendant or reasons supporting the plaintiff's claim that notice should not be given.

2)  If the judicial officer denies issuing an Injunction Against Harassment at an *ex parte* hearing, the judicial officer may set a hearing within 10 days with reasonable notice to the defendant.

b.  *No Contact Orders.*  The judicial officer may prohibit all contact with the plaintiff or other protected parties, except as otherwise specifically ordered in writing by the court. *See* A.R.S. § 12-1809(F)(2).

c.  *Prohibited Locations.*   The judicial officer may also order that the defendant shall not go near the residence, place of employment or school of the plaintiff or other protected parties.   The judicial officer may include other specifically designated location(s) in the Injunction Against Harassment.  *See* A.R.S. § 12-1809(F)(2).

d.  *Protected Persons.* The judicial officer may grant relief that is necessary for the protection of the plaintiff and other specifically designated persons and that is proper under the circumstances. *See* A.R.S. § 12-1809(F)(3).

e.  *Other Relief:*

1.  The judicial officer may grant relief necessary for the protection of the alleged victim and other specifically designated persons proper under the circumstances. A.R.S. § 12-1809(F)(3).

2.  The judicial officer shall ask the plaintiff about the defendant's use of or access to weapons or firearms. The judicial officer may prohibit the defendant from possessing, purchasing or receiving firearms and ammunition for the duration of the Injunction Against Harassment.

5.  *Denial of an Injunction Against Harassment.*  If after the *ex parte* hearing the judicial officer does not have sufficient information to grant the Order of Protection, the judicial officer may deny the request or set a hearing within 10 days with reasonable notice to the defendant. The judicial officer shall document any denial of an Order of Protection. *See* A.R.S. § 13-3602(F).

**F. Injunction Against Workplace Harassment**.  The judicial officer shall hold a hearing with each plaintiff/employer or authorized agent of the employer who requests an Injunction Against Workplace Harassment.

1.  *Contents of Petition.*  The petition shall allege at least one act of harassment and the dates of occurrence.  *See* A.R.S. §12-1810(C)(3).

2.  *Petition Verification.*  An employer or authorized agent must sign and swear or affirm to the truth of the petition before a judicial officer or other person authorized to administer an oath.

# EXHIBIT 8

Mike Palmer
POB 5564
Glendale, AZ 85312
mikepalmer_arizona@fastmail.fm

IN THE SUPREME COURT
STATE OF ARIZONA

PETITION TO REPEAL RULE 6 (E)(4)  )
(e)(2) OF THE ARIZONA RULES OF  )    Supreme Court No. XXX
PROTECTIVE ORDER PROCEDURE,  )
SUPREME COURT NO. R -06-0032   )

Pursuant to Rule 28 of the Rules of the Supreme Court, Mike Palmer, a person "interested

. . . in the repeal of a court rule" respectfully petitions this Court to repeal Rule 6 (E)(4)(e)(2) of

the Arizona Rules of Protective Order Procedure. The rule should be repealed because 1) there is

no lawful basis for it and worse 2) when invoked, it is unconstitutional, violating the 2nd

Amendment civil right of individuals.

    **I. Background.**  It has been my recent observation that both judges and clerks lump

Orders of Protection (OOP) and Injunctions Against Harassment together, treating them the

same, making no distinction between them. Perhaps that's what originally happened here with the

Domestic Violence Rules Committee?

    But they're not the same.  For example, in Arizona, OOP's are governed by Title 13

Criminal Code (see A.R.S. §13-3602) whereas Injunctions Against Harassment are governed by

the less draconian Title 12 Court & Civil  Procedure. (A.R.S. §12-1809)  Furthermore, there is

wording in Order of Protection law to prohibit a defendant from possessing firearms. This has its

basis in Federal law, colloquially known in the courts as a so-called "Brady Disqualification."

But there is no equivalent Federal prohibition for an Injunction Against Harassment.

**II. Argument.** The basis for "Brady" in an Order of Protection is 18 U.S.C. Sections 922(d) and (g). Please note that this law applies ONLY to "intimate partners," i.e., Domestic Violence situations. It does NOT apply to Injunctions Against Harassment because the relationship requirement defined in 18 U.S.C. § 921(a)(32) is not met.[1]

Consequently, "Brady" is codified in Arizona law governing OOP's. Specifically, A.R.S. §13-3602(G)(4) says a judicial officer can suspend a defendant's Second Amendment right, prohibiting a defendant from possessing firearms. The Committee cited this State law to justify its Rule 6(C)(5)(d)(1) for Title 13 OOP's.

However, there is no State law equivalent in a Title 12 Injunction because there is no Federal law supporting. Consequently, the Committee did not cite any law as its basis for its Rule (below). Indeed, the word "firearm" does not appear in Arizona law governing Injunctions Against Harassment (A.R.S. §12-1809). Nevertheless, as it's written now, Rule 6(E)(4)(e)(2) in the Procedure for Injunctions Against Harassment, subtitled "Other Relief" states,

> The judicial officer shall ask the plaintiff about the defendant's use of or access to weapons or firearms. The judicial officer may prohibit the defendant from possessing, purchasing or receiving firearms and ammunition for the duration of the Injunction Against Harassment.

I submit the Committee erred here, going beyond the law the Legislature gave. Consequently, when invoked by a judicial officer, this Arizona Rule of Protective Order Procedure violates the Second Amendment civil right of defendants, especially in light of the recent US Supreme Court Heller ruling. (District of Columbia et al. V. Heller, 554 U. S. ____

---

[1] Per 18 U.S.C. § 921(a)(32), the term "intimate partner" means, with respect to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person.

(2008)

   **III. Request for Emergency Adoption.** If I am correct and there is no lawful basis for

the Committee's Rule, petitioner requests expedited repeal of this Rule as permitted by Supreme

Court Rule 28(G). There is no need for a comment period because if there is no law, there is

nothing to discuss. It should be perfunctory.

   I request expedited repeal because this is not trivial "harmless error." Taking that

literally, there can be real harm and irreparable damage to law abiding defendants as a result of

this unconstitutional Rule,[2] presumably opening the State to liability.


RESPECTFULLY SUBMITTED this 29th  day of December 2009.



                              By_____

                              Mike Palmer
                              POB 5564
                              Glendale, AZ 85312

---

[2] Namely, death from the inability to defend oneself in a dangerous metroplex like Phoenix where there is almost one murder a day.