1 | Thomas C. Horne
Attorney General
(Firm State Bar No. 14000)

2

3 | Pamela J. Linnins
Assistant Attorney General
State Bar No. 019941

4 | 1275 W. Washington
Phoenix, Arizona  85007–2997

5 | Telephone:  (602) 364-1523
Facsimile:  (602) 542-4385

6 | Pamela.Linnins@azag.gov
adminlaw@azag.gov

7 | Attorneys for State Judicial Defendants

8

9 | **IN THE UNITED STATES DISTRICT COURT**

10 | **FOR THE DISTRICT OF ARIZONA**

11

12 | PETER MICHAEL PALMER, an individual,

**Case No: 11-CV-1896-PHX-GMS**

13 | Plaintiff,

14 | v.

**DEFENDANT'S MOTION TO DISMISS COMPLAINT**

15 | KENTON D. JONES, in his official capacity as
Yavapai County Superior Court Judge;

16 | ROBERT M. BRUTINEL, in his official

17 | capacity of Arizona Supreme Court Justice;
JOHN PELANDER, in his official capacity of

18 | Arizona Supreme Court Justice; W. SCOTT
BALES, in his official capacity of Arizona

19 | Supreme Court Justice; ANDREW D.
HURWITZ, in his official capacity of Arizona

20 | Supreme Court Vice Chief Justice; REBECCA

21 | WHITE BERCH, in her official capacity of
Arizona Supreme Court Justice; John or Jane

22 | Does, in their official capacity of judicial officer
in and for the State of Arizona

23

24 | Defendants.

25

26 | Defendants, Kenton D. Jones, in his official capacity as Yavapai County

1

Superior Court Judge, Robert M. Brutinel, in his official capacity of Arizona Supreme Court Justice, John Pelander, in his official capacity of Arizona Supreme Court Justice, W. Scott Bales, in his official capacity of Arizona Supreme Court Justice, Andrew D. Hurwitz, in his official capacity of Arizona Supreme Court Vice Chief Justice, Rebecca White Berch, in her official capacity of Arizona Supreme Court Justice ("State Judicial Defendants"), by undersigned counsel, hereby move the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing this case as this Court lacks subject matter jurisdiction and the Plaintiff's Complaint fails to state a claim upon which relief can be granted.  The grounds for this Motion are more fully stated below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Summary of Complaint Allegations

The Honorable Kenton D. Jones presided over the Arizona state court matter in the Yavapai County Superior Court, resulting in an Injunction Against Harassment being issued against Plaintiff.  Plaintiff claims that the issuance of the Injunction Against Harassment, the enforcement of it and the rules that promulgate it violate his rights. Plaintiff is seeking (1) to have Arizona Rules of Civil Procedure on orders of protection declared unconstitutional; (2) an order issued to the Arizona Supreme Court to repeal the rules regarding orders of protection; (3) to enjoin Arizona State Courts from issuing orders of protection; (4) an order directing that Plaintiff's name be removed from the NCIC database; and (5) Plaintiff be allowed to audit the NCIC database to confirm his removal.

### Defendants are immune from suit in this Court under the Eleventh Amendment

Plaintiff filed his complaint against State Judicial Defendants in their official capacity as judicial officers of the State of Arizona.  Thus, Plaintiff has sued State

1  Judicial Defendants as representatives of the State.  The Eleventh Amendment[1] confirms

2  "the fundamental principle of sovereign immunity limits the grant of judicial authority

3  in Art. III." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98 (1984).

4  As stated in *Pennhurst*:

5              That a state may not be sued without its consent is a
            fundamental rule of jurisprudence having so important a
6              bearing upon the construction of the Constitution of the
            United States that it has become established by repeated
7              decisions of this court that the entire judicial power granted
            by the Constitution does not embrace authority to entertain a
8              suit brought by private parties against a state without consent
            given:  not one brought by citizens of another state, or by
9              citizens or subjects of a foreign state, because of the Eleventh
            Amendment; and not even one brought by its own citizens. . .
10

11       *Id*. Under the Eleventh Amendment, states may not be sued in federal court

12  unless they consent to it in *unequivocal terms* or unless Congress, pursuant to a valid

13  exercise of power, unequivocally expresses its intent to abrogate the immunity. *Id*., at

14  99; s*ee also, Harris v. Ariz. Bd. of Regents*, 528 F. Supp. 987, 994 (D. Ariz.

15  1981)(recognizing that the Eleventh Amendment extends to arms of the state being sued

16  by their own citizens).  Lawsuits in federal court against state officers are also barred by

17  the Eleventh Amendment when "the state is the real, substantial party in interest." *Id.*, at

18  101.  A suit against state officials that is in fact a suit against a state is barred regardless

19  of whether it seeks damages or injunctive relief. *Id*. at 102. "The state is the real party in

20  interest when the judgment would tap the state's treasury or restrain or compel

21  government action." *Almond Hill Sch. v. United States Dep't of Agric*., 768 F.2d 1030,

22  1033 (9th Cir. 1985) (citing *Pennhurst*, 465 U.S. at 101). This is clearly the object of

23  _____

24  [1]   "The Judicial power of the United States shall not be construed to extend to any suit in law
    or equity, commenced or prosecuted against one of the United States by Citizens of another
25  State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI

26

1  Plaintiff's Complaint, as he seeks specific government action.

2      The Plaintiff does not suggest, as he cannot, that State Judicial Defendants have

3  somehow waived their Eleventh Amendment immunity to suit in this Court.

4  Accordingly, because of the Eleventh Amendment and the State's refusal to waive its

5  sovereign immunity to suits of this nature, there is no subject matter jurisdiction in this

6  Court to entertain an action against State Judicial Defendants and so the Complaint must

7  be dismissed.

8            State Judicial Defendants are immune from suit for judicial
              Acts under judicial immunity.
9

10     It is a well-settled legal principle that judges have absolute immunity from

11  liability for their judicial or adjudicatory acts.  *Forrester v. White,* 484 U.S. 219, 108

12  S.Ct. 538, 98 L.Ed.2d 555 (1988); *Mireles v Waco,* 502 U.S. 9, 112 S.Ct. 286, 116

13  L.Ed.2d 9 (1991); *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507

14  (1985); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978);

15  *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).  In 1872, the U.S.

16  Supreme Court found that judicial immunity was the settled law of the English courts,

17  and held "it is a general principle of the highest importance to the proper administration

18  of justice that a judicial officer, in exercising the authority vested in him, shall be free to

19  act upon his own convictions, without apprehension of personal consequences to

20  himself."  *Bradley v. Fisher,* 80 U.S. 335, 13 Wall. 335, 347, 20 L.Ed. 646 (1871).

21     Judicial immunity is an immunity from suit, not just from ultimate assessment of

22  damages. [2] *Mireles, supra.*  In *Forrester v. White,* 484 U.S. at 226, 108 S.Ct. at 544, the

23  _____

24  [2] Plaintiff suggests that he is not seeking any monetary relief. In fact, judges and those
    performing judge like functions are absolutely immune from damage liability for acts
25  performed in their official capacities. *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986).

26

4

1   Court stated:

2
3       If judges were personally liable for erroneous decisions, the
        resulting avalanche of suits, most of them frivolous but
4       vexatious, would provide powerful incentives for judges to
        avoid rendering decisions likely to provoke such suits.
5       [Citation omitted].  The resulting timidity would be hard to
        detect or control, and it would manifestly detract from
6       independent and impartial adjudication.  Nor are suits against
        judges the only available means through which litigants can
7       protect themselves from the consequences of judicial error.
        Most judicial mistakes or wrongs are open to correction
8       through ordinary mechanisms of review, which are largely
        free of the harmful side-effects inevitably associated with
9       exposing judges to personal liability.

10

11          A judge is entitled to absolute judicial immunity if his actions are (1) within the

12   judge's jurisdiction, and (2) performed in the judge's judicial capacity.  *Stump, supra.*

13          Judicial immunity can only be overcome in one of two circumstances:  (1) for

14   non-judicial actions, i.e., actions not taken in the judge's judicial capacity; or (2) for

actions, though judicial in nature, taken in the complete absence of all jurisdiction.
15
*Mireles v Waco,* 502 U.S. 9, 112 S.Ct 236, 116 L.Ed.2d 9 (1991).  Plaintiff's Complaint
16
is devoid of any factual circumstances that demonstrate the presence of either of these
17
situations.  Further, judicial immunity is fully applicable in suits brought under 42
18
U.S.C. § 1983 alleging deprivation of constitutional rights.  *Pierson v. Ray,* 386 U.S.
19
547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

20          In 1996, 42 U.S.C. § 1983 was amended to expressly allow the application of

21   judicial immunity for declaratory and injunction actions.  Specifically, the following

22   language was added: "in any action brought against a judicial officer for an act or

23   omission taken in such officer's judicial capacity, injunctive relief shall not be granted

24   unless a declaratory decree was violated or declaratory relief was unavailable."  Federal

Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853
25
(codified as amended at 42 U.S.C. § 1983 (2000)). Neither limitation applies in this
26

case. Any allegations by Plaintiff of improper actions by State Judicial Defendants pertain to acts that occurred during the pendency of the cases to which Plaintiff was a party that were filed in an Arizona Superior Court and assigned to State Judicial Defendant Jones. To the extent Plaintiff is complaining about the actions of Judge Jones in a case in which Judge Jones was a named party, those acts were performed in Judge Jones' judicial capacity. To the extent Plaintiff alleges judicial mistakes or incorrect rulings by the Judge Jones, Plaintiff should have addressed, through a direct appeal, any issue Plaintiff had regarding the handling of the particular case to the Arizona state appellate court. Under these circumstances, the State Judicial Defendants are entitled to absolute immunity from liability for their judicial acts, and must be dismissed with prejudice from Plaintiff's pending suit.

Plaintiff further requests that the Arizona Supreme Court immediately change its rules, specifically, Rule 6(E)(A)(e)(2) and have it declared unconstitutional. However, the judiciary acting in their rule-making function are judged for immunity purposes by standards pertaining to legislators. Thus, State Judicial Defendants acting in the rule-making function are absolutely immune from suits for damages, declaratory or injunctive relief. *Supreme Court of Virginia v. Consumers Union of United States*, 446 U.S. 719 (1980). To the extent Plaintiff challenges the State Judicial Defendants in their rule-making capacity, they are also immune from suit.

<u>The Plaintiff is seeking a de facto injunction against State court operations.</u>

The Plaintiff is seeking an order from this court directing the state court to vacate or reverse the rulings it has made. An order from this Court directing the state court on how to proceed would be a de facto injunction against the state court. There is an important public policy and principle of federalism involved whenever a federal court is requested to interfere in the operations of a state court. The strong public policy against such unwarranted interference appears in statutory form in several instances.

1
2
3
4
5
6
7
8
9
10
11
12
13

For example, the Anti-Injunction Act, 28 U.S.C. § 2283, expressly directs this Court not to enter any injunctions against proceedings in a state court except in limited circumstances. The Anti-Injunction Act provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."   An Act of Congress, 42 U.S.C. 1983, authorizes a "suit in equity" to redress "the deprivation," under color of state law, "of any rights, privileges, or immunities secured by the Constitution . . . ."  Although, Plaintiff's request is couched as 42 U.S.C. 1983 action, Plaintiff is merely seeking an appellate review, in this Court rather than the appropriate state court, of his claim that the State Judicial Defendants should have ruled in a different manner.  Plaintiff is requesting that this Court declare the state court judge's rulings erroneous.  Plaintiff also seeks to enjoin supreme court rule-making.

14
15
16
17
18

Federal courts cannot enjoin state court proceedings unless expressly authorized by statute, to protect the court's own jurisdiction or for the efficacy of its own judgments.[3]    *McFarland v. Scott,* 512 U.S. 849 (1994); *Mitchum v. Foster*, 407 U.S. 225, 226 (1972). Here, no statutory authority to enjoin state court proceedings exists and the Complaint should be dismissed.

19
20
21
22

23
24
25
26

---

[3] Only the United States Supreme Court has the power to undertake appellate review of decisions of a state court, even if it is alleged that the state court's actions are unconstitutional. *Partington v. Gedan*, 961 F.2d 852, 864, (1992), *citing D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486, 103 S.Ct. 1303, 1317 (1983).  If characterized as an appellate review, this Court has no jurisdiction to entertain the Complaint and it should be dismissed.

<u>Plaintiffs' claims against the State Judicial Defendants are barred by the</u>

<u>Doctrine of Abstention.</u>

This Court should abstain from entertaining Plaintiff's claims because there are adequate state remedies available to address his grievances. That is, the State judicial system provides for appellate review of state court rulings of the type Plaintiff challenges. *See e.g.,* A.R.S. § 12-2101. Plaintiffs' failure to take advantage of adequate state court remedies for review of the conduct complained of in his Complaint, or his dissatisfaction of the outcome of any remedies it may have utilized, does not alter the fact that adequate state remedies are available. The constitutionality of Arizona court rules may be challenged in state court.

Plaintiff's claims are barred under the *Younger* abstention doctrine. *Younger v. Harris,* 401 U.S. 37, 55 (1971) "and its progeny generally direct federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *Hirsch v. Justices of the Supreme Court of the State of California,* 67 F.3d 708, 712 (9th Cir.1995) (citations omitted). In the Ninth Circuit, *Younger* abstention is appropriate if "(1) there are ongoing state judicial proceedings, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions." *Gartrell Constr., Inc. v. Aubry,* 940 F.2d 437, 441 (9th Cir.1991) *citing, Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982). Plaintiff's Complaint seems to indicate that state court proceedings in which he is a litigant are currently pending or there will be future proceedings in the state superior court. Plaintiff has an adequate state remedy available to him. Abstention by this Court is proper.

///

///

1

2

<u>Plaintiff's claims against the State Judicial Defendants are barred by</u>

<u>the *Rooker-Feldman* Doctrine.</u>

3

4

5

Since the relief sought against the State Judicial Defendants is a determination that a state court incorrectly decided a state court matter, this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

6

7

8

9

10

11

12

13

14

15

16

17

18

The *Rooker-Feldman* doctrine is the result of two decisions holding that federal review of State court decisions is proper *only* in the U.S. Supreme Court, under 28 U.S.C. § 1257. *District of Columbia Ct. of Appeals v. Feldman,* 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923). Thus, the doctrine bars suits "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.,* 544 U.S. 280, 284 (2005). Under this doctrine, the "district court, as a court of original jurisdiction, has no authority to review the final determination of a state court in judicial proceedings." *Worldwide Church of God v. McNair,* 805 F.2d 888, 890 (9th Cir. 1986). This is true even if the challenge is that the state court's action was unconstitutional. *Feldman,* 460 U.S. at 486. The *Rooker-Feldman* doctrine is jurisdictional. *Olson Farms v. Barbosa,* 134 F.3d 933, 937 (9th Cir. 1998).

19

20

21

22

23

24

The Ninth Circuit has held that *Rooker-Feldman* bars any case that actually requires a federal court to in essence review a state court decision. *Doe & Associates Law Offices v. Napolitano,* 252 F.3d, 1026, 1029 (9th Cir. 2001). Where a district court would have to hold that a state court was wrong in order to find in favor of plaintiffs, the issues presented to both courts are inextricably intertwined and this Court should dismiss the case under *Rooker-Feldman.* 252 F.3d at 1029-1030.

25

26

The Ninth Circuit has also described the proper methodology for evaluating a

claim under the *Rooker-Feldman* doctrine.   "[U]nder *Rooker-Feldman,* 'we must pay close attention to the relief sought by the federal court plaintiff.'"   *Bianchi v. Rylaarsdam,* 334 F3d 895, 900 (9th Cir. 2003), *quoting from Kenmen Eng'g v. City of Union,* 314 F.3d 468, 476 (10th Cir. 2002)(emphasis in original).   In *Bianchi*, the court noted that the plaintiff's federal complaint sought relief specific to his individual case, and found that because it could not grant the relief sought by the plaintiff without "undoing" the decision of the state court, the *Rooker-Feldman* doctrine applied to bar that action.   *Id*.   This methodology is easy to apply in this case, since the relief sought is invalidation of the judicial decisions of the Superior Court of Arizona in Yavapai County.   This Court should look no further than the relief Plaintiff demands to determine that there is no subject matter jurisdiction over State Judicial Defendants. The *Rooker-Feldman* doctrine requires that this Court dismiss the complaint for lack of subject matter jurisdiction, since the relief sought is review and reversal of a state court decision.

<u>Plaintiff makes no request for which relief can be granted.</u>

Plaintiff's claims against State Judicial Defendants includes a demand that his name be removed from the NCIC.  Plaintiff's claim does not create the requisite case or controversy that is necessary for relief to be granted.  The State Judicial Defendants have no power or authority over NCIC.  The Ninth Circuit has held that there was no subject-matter jurisdiction for suing a state court judge to obtain a determination that Oregon state laws governing the appointment of a temporary guardian were unconstitutional.  *Grant v. Johnson*, 15 F.3d 146, 147-48 (9th Cir. 1994).  The court's holding was based upon the lack of any case or controversy between an aggrieved party and a state judge who was only evenhandedly applying state law.  *Id*. at 148.  The same is true here.

Plaintiff requests this court force the State Judicial Defendants to order a federal agency, such as the Federal Bureau of Investigation, to take action on Plaintiff's behalf.

1  State courts, including Arizona, are not responsible for the entry of or maintenance of

2  orders on the NCIC.  The responsible entities are not defendants.  This request must also

3  be denied as it is barred by the Supremacy Clause of the U.S. Constitution.  U.S. Const.

4  art VI, § 2.  As a federal agency has been given authority in this area, state actors are

5  preempted from taking any action to the contrary or otherwise.[4]

6  **CONCLUSION**

7  For the reasons set forth above, the State Judicial Defendants respectfully request

8  that the Plaintiff's Complaint be dismissed for lack of subject matter jurisdiction and

9  failure to state a claim upon which relief can be granted as against them.

RESPECTFULLY SUBMITTED this 25 day of October, 2011.

10

11  THOMAS C. HORNE
    Attorney General

12
    s/ Pamela J. Linnins
13  Pamela J. Linnins
    Assistant Attorney General
14  Attorneys for Defendant

15

16

17

18

19

20

21

22

23  ———————————————

24  [4] A.R.S. § 41-1750(7) does set out the process for an individual to review and challenge the
    criminal history report information relating to the individual.  See also Ariz. Admin Code §
25  R13-1-108.

26

11

**CERTIFICATE OF SERVICE**

 X  I hereby certify that on October 25, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

  X    I hereby certify that on October 25, 2011, I caused the attached document to be served by first class mail to:

P. Mike Palmer
18402 N. 19th Avenue #109
Phoenix, AZ  85023
602-513-3738
Pro Se

2352466