P. "Mike" Palmer
18402 N. 19th Ave., #109
Phoenix, AZ 85023
602-513-3738 (cell)
Pro Se

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PETER MICHAEL PALMER,<br><br>  Plaintiff<br><br>vs.<br><br><br><br>KENTON D. JONES, et al.<br><br>  Defendants | 11-CV-1896-PHX-GMS<br><br>**PLAINTIFF'S RESPONSE<br>TO DEFENDANTS' MOTION<br>TO DISMISS**<br><br>(Title 42 U.S.C. §1983) |

Today is the deadline for pro se plaintiff to file his Response to Defendant's [sic] Motion to Dismiss.[1] However, plaintiff is unsure whether he is allowed to file any papers with this Court while this matter is currently referred to the Ninth Circuit, as it now is. Nor can pro se plaintiff find any rules whether deadline clocks "pause" during such interlocutory appeals.[2] Nevertheless, so as to not offend and not forfeit, plaintiff files this timely Response to Defendants' Motion to Dismiss Complaint (Doc. 18).

**OVERVIEW**

Defendants have moved this Court to dismiss plaintiff's Complaint. Their motion is not difficult to adjudicate, as there can be only one logical outcome. Deny.

---

[1] Taking into account three day extension for service by mail and the Veterans' Day Holiday. (Per F.R.Civ.P 6(d) and A(1)(C) respectively.)

[2] In anticipation of future interlocutory appeals to the Ninth, I ask the Court for guidance: Is a litigant to meet District court deadlines when the Ninth has jurisdiction?

First and foremost—and since defendants moved for abstention in their motion, per the arguments previously offered in Plaintiff's Emergency Motion for Reconsideration (Doc. 6)—dismissal is simply not in the universe of logical outcomes in this unique action. This action cannot be adjudicated by its own defendants in State court. (See Fatal Flaw I and II in Doc. 6.) Besides, in general, there is strong precedent for the federal court to abstain from abstention.[3]

Consistent with this, as proffered in plaintiff's Doc.6, and now stated definitively after further research, this is a case of first impression—distinguished from the few other federal actions against State judges because, among other things, these defendants, members of the judicial branch, have unconstitutionally enacted an unconstitutional "statute" and are the enforcers of that "statute."[4] That is, they have acted in "absence of all jurisdiction." *Mireles v Waco*, 502 U.S. 9, 112 S.Ct 236, 116 L.Ed.2d 9 (1991). Moreover, they have been noticed as to the unconstitutionality of their actions long before suit was brought—a critical additional element which further mandates

---

[3] "As a general matter, [the First Circuit] has held that abstention should be 'the exception, not the rule.' Fragoso v. López, 991 F.2d 878, 883 (1st Cir.1993). Likewise, the Supreme Court has held that the balance of state and federal interests 'only rarely favors abstention.' Quackenbush, 517 U.S. at 728, 116 S.Ct. 1712; see also Deakins, 484 U.S. at 204, 108 S.Ct. 523 (noting that only 'extraordinary circumstance[s] ... may justify abdication of the "virtually unflagging obligation ... to exercise the jurisdiction given" the federal courts')" *Guillemard-Ginorio V. M. Contreras-Gómez*, 585 F.3d 508 (1st Cir. 2009)

[4] "The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights-to protect the people from unconstitutional action under color of state law . . ." *Mitchum v. Foster*, 407 U.S. 225, 226 (1972).
    Really, who would have anticipated that a State court's highest judges would violate their own state constitution by literally legislating from the bench? When considering immunity in a § 1983 suit against the Justices of the Supreme Court of Puerto Rico, the First Circuit generalized that "Almost invariably, they [judges] have played no role in [a] statute's enactment, they have not initiated its enforcement . . ." But that is not the case here.

adjudication by this Court. Therefore, this case must be fully adjudicated in federal court.

Because this is a case of first impression, opposing counsel's negative cites for dismissal via immunity and/or abstention are, by definition, off point. For negative precedents cannot apply in unique new instances. On their face they are moot in light of the unique distinguishing circumstances here. Nevertheless, opposing counsel throws several abstention doctrines against the wall to see what will stick. As above, abstention in this unique action is not logical. Defending against abstention is, a priori, moot. But for the sake of completeness, I will deal with them at the end.

Happily, while this is a case of first impression, it does parallel the ongoing case in this same Court of *United Food & Commercial Workers Local 99 v. Brewer*, CV-11-921-PHX-GMS (cited in Doc. 6), where the defendants also are State officials. This Court has already upheld claims in *United* that parallel plaintiff's claims here, even granting plaintiffs in *United* a Preliminary Injunction to preclude alleged constitutional harm. As it pertains to this Response, in *United* this Court denied dismissing the State officials who caused traceable injury to plaintiffs. How much more here where there's been actual injury? Not only that, but injury not merely "fairly traceable" to defendants, but directly attributable to defendants. Since the State has trod out the same Eleventh Amendment immunity argument in this instant matter it used in *United*, I will simply quote this Court's Order from *United* to refute here.

After a brief editorial comment and briefly restating the facts for the record, I will "accentuate the positive" before "eliminating the negative." I will focus on a recent federal case similarly considering dismissal of an § 1983 action against State judges because it addresses and dispenses with many of the same cites opposing counsel uses in her motion.

### EDITORIAL COMMENT

In general, opposing counsel obfuscates and mischaracterizes the facts in this matter. For example, consider her Summary of Complaint. As amply stated in my Zeroth

1  Amended Complaint ("ZAC," Doc. 5), this matter is not about Criminal Orders of
2  Protection, but rather Civil Injunctions Against Harassment. Nor am I asking this Court
3  to have the "Arizona Rules of Civil Procedure" declared unconstitutional, but rather one
4  Rule of the "Arizona Rules of Protective Order Procedure." By over-generalizing, she
5  perpetuates a fraud and makes this case more than it is as well, while, at the same time,
6  less that it less. Similarly, in the body of her motion, she misstates the facts of this matter
7  to set up invalid strawman arguments for her to knock down. She also glosses over
8  critical quotes in her cites which bear directly on this action, as we will show.

## THE FACTS

10  Briefly then, I restate the salient facts:
11  Plaintiff has suffered the deprivation of numerous constitutional rights as a result
12  of an ex parte civil action at the hands of defendant Jones, under the guise of A.R.S. §
13  12-1809. (ZAC, ¶19).[5] An ex parte deprivation of any constitutional right constitutes a
14  prima facie violation of Due Process.[6]

15  Defendant Jones did not declare the ex parte action unconstitutional and dismiss
16  it, as is within his authority as a judge. Defendant Jones merely "rubber stamped" one
17  citizen's ex parte claims against another citizen. Contrast this with (now retired) Arizona
18  Judge John Keegan (a student pilot of plaintiff's once) who declared state law
19  authorizing photo-enforcement tickets unconstitutional and, sua sponte, dismissed them
20  from his court. (Exhibit 1)

21  Judge Jones issued the Injunction and enforces the Injunction by force of law,
22  namely through A.R.S. § 13-2810. **Interfering with judicial proceedings**; "A. A person

---

[5] And, raised for the first time here, plaintiff has very likely suffered "Viewpoint Discrimination" from defendant Jones also.

[6] As this Court acknowledged in its Order in *United* (Doc. 100), ex parte action implicated the Fourteenth Amendment. (Doc. 100, 8:16)

1 commits interfering with judicial proceedings if such person knowingly: 2. Disobeys or
2 resists the lawful order, process or other mandate of a court;"[7] Among the constitutional
3 deprivations plaintiff is suffering is the deprivation of his Second Amendment right.
4 (ZAC, ¶36) There is no statutory authority in A.R.S. § 12-1809 authorizing defendant
5 Jones to deprive plaintiff of his Second Amendment right. (Id., ¶39) Thus defendant
6 Jones exceeded his statutory authority. Given that, to date, defendant Jones has not
7 vacated his Injunction as did JP Judge Karen Slaughter in the similar Michael Roth
8 (Quartzsite) fiasco (Exhibit 2), it is a "reasonable inference" that defendant Jones would
9 consider possession of weapons by plaintiff a violation of his order, thus perpetuating
10 and enforcing his order.

11     Contrary to opposing counsel's implication, (8:21) plaintiff has not engaged the
12 State in challenging these deprivations. To do so might invoke Rooker-Feldman. There
13 are no pending state court proceedings in which this Court can interfere.

14     It is likely defendant Jones was relying on the Arizona Supreme Court's "Arizona
15 Rules of Protective Order Procedure" (ARPOP) instead of the Arizona Revised Statutes.
16 (Id., ¶48) The latter is law. The former is not. Defendant Jones took an oath to defend the
17 latter, not the former.

18     The ARPOP is compiled by the Justice defendants of the Arizona Supreme Court.
19 It is merely a compendium of state laws. It cannot supercede state law. While the Court
20 has statutory authority (I presume, no cite) to make its own rules for the administration
21 of the courts, publishing the ARPOP—or, at least, publishing an unlawful Rule—is not

---

[7] While Plaintiff argues the prohibition against weapons is not a "lawful order," it is unrealistic to expect plaintiff to challenge the order, get arrested, be put in jail and spend thousands of dollars to fight it in criminal court. "If prosecutors and law enforcement personnel cannot be proceeded against for declaratory relief, putative plaintiffs would have to await the institution of state-court proceedings against them in order to assert their federal constitutional claims. This is not the way the law has developed . . . " *Supreme Court of Virginia et al. v. Consumers Union of the United States*, 446 U.S. 719, 100 S.Ct. 1967.

administrative. Therefore, such is not a legislative function.

In the ARPOP, the defendant Justices have published a rule, namely Rule 6(E)(4)(e)(2) that is without legal citation because it is outside legal authority. (Id., ¶50) That is, defendants have created, promulgate and continue to promulgate a Rule which they have, through their own officers, given the force of law. This is a violation of Article III of the Arizona Constitution, Distribution of Powers.

Almost a year before this action commenced, defendant justices were noticed, by way of the Supreme Court's public forum, that they were promulgating a fraud. (Id., ¶52) The justices even acknowledged plaintiff's petition had some merit. (Id., ¶54) Yet, to this day, even after this action commenced, defendants have not acted to repeal their unlawful Rule.

Plaintiff had his Second Amendment right revoked once before via a Civil Injunction. (Id., ¶20) As a proximate result, plaintiff's name was put on the FBI's NCIC database for "positive Brady Record Indicator." (See Doc. 6, Ex. C) There is nothing in Arizona statute § 12-1809 giving the defendants the statutory authority to put a citizen's name in the FBI's Federal database.

A recent conservation with a veteran certified Quartzsite (Arizona) police officer informs me NCIC information is coughed up by Dispatch whenever an ACJIS inquiry is made on a citizen. Since my name was put on the NCIC database before by JP Judge Hamm as Standard Operating Procedure in a previous Civil Injunction, it is reasonable to believe I am suffering the same NCIC injury now.[8]

Being the highest court in the State, even if defendant justices could sit on and judge their own case, given that, to this day, they refuse to repeal their unconstitutional rule, it is reasonable to assume they would continue their present course. Furthermore,

---

[8] "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Quoting this Court in *Baca v. Callahan*, 2011 WL 3759480.

Arizona law governing appeals of Civil Injunctions (Rule 9(B)(1) 17B A.R.S.) precludes plaintiff from appealing past Superior Court.[9] Thus, the only remedy—and the proper remedy—available to plaintiff is the federal court.

## CASE IN POINT

Before refuting defendants' motion line by line, it seems more instructive to cite a recent District Court case (from 2003, after the 1996 Federal Courts Improvement Act cited by defendants) which deals with many of opposing counsel's objections. The case is *LECLERC, et al. v. WEBB, et al.* (270 F.Supp.2d 779) The defendant Justices of the Louisiana Supreme Court were sued in their official capacities (as here) as in what appears to be a § 1983 action. The complaint sought declaratory and injunctive relief (as here) but also monetary damages. (Not here.) From the Westlaw headnote, "The District Court, Zainey, J., held that: (1) claims were ripe for adjudication; (2) aliens had standing; (3) Ex parte Young exception applied, such that action was not barred by Eleventh Amendment; (4) Louisiana Supreme Court Justices were not entitled to immunity from suit; (5) aliens were not denied due process or equal protection; (6) state Supreme Court rule was not preempted by federal law; . . ."

While not an exact parallel (since this instant matter is a case of first impression), I cite this ruling since Items 1, 2, 3, 4 and 6 are on point in this instant matter and were affirmed.

As this Court can see, defendants in *Leclerc* rounded up the ususal suspects, just as defendants do here. By name they are: lack of jurisdiction, failure to present a "case" or "controversy," *Rooker-Feldman*, Eleventh Amendment, Judicial & Legislative Immunity, and Abstention.

Page limits prevent an in-depth analysis. Nor do I think it necessary. For, after

---

[9] Not stated in ZAC (Doc. 5) and only recently discovered, even though a Superior Court judge (defendant Jones) signed the Injunction, it has the Prescott Justice Court stamp and is a Justice Court matter.

1  reading this Court's Order denying dismissal of State Agents in *United* (Doc. 100), I am
2  persuaded that this Court knows how to Choose The Right. So I merely highlight
3  important points in *Leclerc*, following along with Judge Zainey's sequence.

4      As to Case or Controversy, unlike plaintiff Leclerc, I have suffered actual injury.
5  As to *Rooker-Feldman*, like plaintiff Affleck, I have not engaged the State in any way. I
6  am not a party to a state suit. Thus, there can be no collateral attack on a state court
7  judgment.

8      As with Affleck, I assert federal law does not require exhaustion of state remedies
9  prior to brining a claim alleging violations of federal law. (And remember, my Second
10  Amendment deprivation is not an allegation, but fact per by defendant Jones' Order.
11  ZAC, Ex. 1) Judge Zainey agrees, saying in FN12, "Indeed, it is well established that
12  administrative exhaustion does not apply to civil rights claims . . . " (citations omitted.)
13  Also as with Affleck, given that the Arizona Supreme Court refused to repeal its
14  unlawful Rule when I petitioned, pursuing in-state action would be futile anyway.

15      As to the Eleventh Amendment, I'll simply quote this instant Court (GMS) from
16  Doc. 100 in *United*. "State officials, however, can be sued in their official capacity for
17  injunctive relief to prevent them from implementing state laws that violate the
18  Constitution. Under the doctrine of Ex Parte Young, 'relief that serves directly to bring
19  an end to a present violation of federal law is not barred by the Eleventh Amendment
20  even though accompanied by a substantial ancillary effect on the state treasury.'"

21      In my instant case, a state "law" which violates the Constitution had already been
22  implemented and continues to be promulgated. It has affected me and others before
23  (Michael Roth of Quartzsite) and will continue to do so unless challenged. So how much
24  more the harm here? Furthermore, as I will address in the next section, the state is not a
25  real party of interest since no money or revenue is involved, nor any lawful state action.
26  "The state is the real party in interest when the judgment would tap the state's treasury or
27  restrain or compel government action." There is no official, sanctioned government
28

action here to compel. The defendants made up, promulgate and enforce a "law," acts they are prohibited from doing.

As to Judicial Immunity, Judge Zainey presents a lot of history, starting with opposing counsel's own *Supreme Court of Virginia v. Consumers Union,* taking us through counsel's *Forrester V. White*, ending with counsel's Federal Courts Improvement Act of 1996. After considering the history, Judge Zainey sums up, saying, "The Supreme Court's jurisprudence had long been unequivocal in that the Court did not consider **every act** taken by a judicial officer to be a 'judicial act' subject to judicial immunity. Therefore, Congress's decision to preclude injunctive relief when the judge acts specifically in his 'judicial capacity' can only mean that injunctive relief remains available when the judicial officer acts in other capacities. . . . " Considering the history, he then defines judicial capacity as the SCOTUS cited in Forrester: "the administrative, legislative, or executive functions that judges may on occasion be assigned **by law** to perform."

However, in this instant case, by making up law and promulgating such in a Handbook of theirs, the Justices are acting outside law. Defendants are not assigned by law to perform the unconstitutional "function" of promulgating a Rule in their Handbook that the Legislature and Governor did not authorize.

Interestingly, Judge Zainey shrewdly observes (in FN17) that "Interestingly, Defendants' own invocation of legislative immunity [which defendants in this instant case also invoke - see Doc. 18, 6:14] belies any assertion that they believe that the FCIA erased the recognized distinctions between the various capacities in which judges act."

Moving on to Legislative Immunity, in my instant case, because the Justices lack statutory authority to make law, and since Rule 6(E)(4)(e)(2) is not based on law, the Justices cannot claim they are simply promulgating a rule from the Legislature. Therefore, by definition, they cannot claim Legislative Immunity.

Last is Abstention. As far as specific abstention doctrines go, there's nothing on

1 point in *Leclerc*. Nevertheless, an important point: Judge Zainey noted "[Justice] Defendants' abstention argument is less persuasive given that many of Plaintiffs' federal arguments have already been presented to and rejected by the Louisiana Supreme Court." Similarly, plaintiff here has been a good citizen, has tried to repeal the unconstitutional Rule from within the system (Doc. 5, Ex. 8) and yet has been rejected by the Arizona Supreme Court. (ZAC, ¶53.) There is no reason this Court should believe that, even if it could abstain and let the Justices judge themselves, that they would do differently. They're being sued in federal court but still haven't repealed their Rule.

## LINE BY LINE

For the sake of completeness, I refute opposing counsel's arguments.

Opposing counsel cites *Pennhurst State* to invoke Eleventh Amendment immunity. (3:3) But she fails to quote "The Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State." (*102)

Likewise, as to the State being a party of interest, she omits "The theory . . . [is] that an unconstitutional enactment is void and therefore does not impart to the officer any immunity from responsibility to the supreme authority of the United States. Since the State could not authorize the action, the officer was stripped of his official or representative character and [was] subjected to the consequences of his official conduct." (*102, citations, quotes and internal brackets omitted.) The defendants here, by engaging in unconstitutional acts (both state and federal) cannot represent the state's interest. Nor did I name the State.

Counsel quotes "The state is the real party in interest when the judgment would tap the state's treasury or restrain or compel government action." (3:19) I am not suing for monetary damages. As for tapping the treasury, it is not plaintiff's fault that defendants refuse to repent, choosing to waste the State's money to fight their unconstitutional action. They had plenty of prior notice.

Furthermore, counsel claims I am seeking a specific government action. This is patently false. In this matter, the defendants cannot represent the government because their actions are outside government authority. Therefore, by definition, there is no government action that can be restrained.

I have already dealt with judicial immunity. But opposing counsel cites English law about the power "vested" in judges. (4:16) There is no power vested in a judge to violate the state and federal constitution. Rather, they are to uphold and obey it.[10]

Counsel quotes *Pierson v. Ray*, which Judge Zainey's history shows is not on point here. For icing on the cake, I quote Justice William Douglas in dissent in Pierson: "I do not think that all judges, under all circumstances, no matter how outrageous their conduct are immune from suit under 17 Stat. 13, 42 U.S.C. 1983."[11]

Opposing counsel plays fast and loose with the phrase "rule-making function" citing no authority. I trust the Court realizes that just because it's called "Rule" 6(E)(A)(e)(2) in the ARPOP, that does not make it a bona fide legislative function. Codifying ethics rules for licensed state attorneys is a bona fide legislative function for the judiciary. Creating "law" on the citizenry by fiat is not.

Counsel's invocation of the Anti-Injunction Act is moot because there has been no "ruling" by defendants against plaintiff in any constitutionally defined judicial sense. There hasn't even been a trial! Plaintiff is not even a party to a state suit! Moreover, an ex parte "ruling" that strips one of their constitutional rights, by definition, strips state officials of any claim to a "ruling."

---

[10] Quoting the First Circuit's expectation and presumption that "[Judges] are sworn to uphold the Constitution of the United States," cited by Chief Judge Schroeder in 1994. *In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17 (CA1 1982) and *Grant v. Johnson*, 15 F.3d 146 (CA9 1994), respectively.

[11] This was reiterated in 1984. The appellate courts "are in agreement that judicial immunity is no bar to injunctive relief." See FN6 of *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970

1     As to abstention (p. 8): I have already dealt with Younger. But if counsel insists
2 on citing *Hirsh* to amplify, she should have quoted the three prong test. ". . . abstention
3 in favor of state judicial proceedings is required if the state proceedings (1) are ongoing
4 [they are not], (2) implicate important state interests [unconstitutionally promulgating
5 and enforcing unconstitutional rule as "law" is not a state interest], (3) provide the
6 plaintiff an adequate opportunity to litigate federal claims."

7     Amplify (3) with more from *Hirsh* that " . . . abstention is inappropriate in the
8 extraordinary circumstance that the state tribunal is incompetent by reason of bias."
9 I've already petitioned the defendants about their unconstitutional Rule, but they refused
10 to self-correct, proving a predisposition. (I.e., bias.) Thus defendants fail at all three
11 points of their own cite and then some.

12     As to Rooker-Feldman: the history shows that this doctrine has been in continual
13 flux since its inception. Apparently even the SCOTUS has trouble understanding it.
14 Possibly opposing counsel too, since she quotes Rooker-Feldman's "inextricably
15 intertwined" verbiage. Yet, in her own *Exxon Mobil* cite we read, "More recently,
16 however, the court of appeals has cautioned that reliance on its pre-Exxon formulation of
17 the Rooker–Feldman doctrine, and in particular the "inextricably intertwined" prong,
18 may no longer be appropriate."

19     Whatever the case, there is no state court decision in the judicial sense in this
20 matter. (No finding of fact, etc.) Even if there were, nothing here is inextricably
21 intertwined. This Court has already implied it could intervene right now if it wanted to
22 end this and grant me Justice. (Order, Doc. 4, 3:4-6) The defendants are
23 unconstitutionally promulgating and enforcing an unconstitutional Rule. And as shown
24 previously, Rooker-Feldman does not apply, per Zainey.

25     Opposing counsel states, matter of factly, "Plaintiff's claim does not create the
26 requisite case or controversy that is necessary for relief to be granted." (10:15. Re:
27 removing my name from the NCIC.)

28

1     Oh, C'mon. In my first Injunction (ZAC, Doc. 5, ¶20), an Arizona judge put my name on the NCIC list ("positive Brady Record Indicator," Doc. 6, Ex. C). It is presumed she ordered it removed when she rescinded it. (ZAC, Ex. 6)

    Well, at least opposing counsel makes my point. At 10:18, she confirms my claim that the federal court is the ONLY court that has the authority to ensure my name is removed from the NCIC via audit and action. Therefore, this Court, the federal court, must try this matter.

    Opposing counsel cites *Grant v. Johnson*, (10:21) "The court's holding was based upon the lack of any case or controversy between an aggrieved party and a state judge who was only evenhandedly applying state law. " Then opposing counsel says, "The same is true here."

    No it isn't. The Second Amendment issue is wholly absent any state law. And the whole ex parte deprivation of constitutional rights violates state and federal law, via the respective constitutions.

    Opposing counsel states as fact "Plaintiff requests this court force the State Judicial Defendants to order a federal agency, such as the Federal Bureau of Investigation, to take action on Plaintiff's behalf." (10:25)

    False. What I said in my ZAC, Relief Sought, Item E2, was for "this court" to grant me an audit of my NCIC record. The context clearly means "this federal court," as equally obvious in Item F, where I similarly address a personal request to "this court."

    And, as before, opposing counsel makes my case at 11:1, stating "State courts, including Arizona, are not responsible for the entry of or maintenance of orders on the NCIC. The responsible entities are not defendants. . . . As a federal agency has been given authority in this area, state actors are preempted from taking any action to the contrary or otherwise." We both agree, then, that the defendants cannot grant me the equitable relief I seek. Only a federal court can do that.

**THEREFORE**, for these reasons plus the logic presented in my Emergency Motion for Reconsideration, this Court must deny Defendants' motion to dismiss.

SUBMITTED this 14 day of November, 2011

By: /s/ P. Michael Palmer
P. Michael Palmer
18402 N. 19th Ave., #109
Phoenix, AZ 85023
602-513-3738

**Certificate of Service:**

Copies of the foregoing mailed via U.S. Mail on November 14, 2011 to:

Pamela J. Linnins
1275 W. Washington
Phoenix, AZ 85007

# EXHIBIT 1

News

## JP challenges speed cameras

## State, county decline to contest unconstitutional claim

by **Michael Kiefer** - Jan. 28, 2009 12:00 AM
The Arizona Republic

Recommend    7 recommendations. Sign Up to see what your friends recommend.

0

A West Valley justice of the peace has declared the state's photo-enforcement cameras unconstitutional. Now, he's waiting for a government agency to pick up the challenge so that his cause can move through the court system.

So far, neither the Arizona Attorney General's Office nor the Maricopa County Attorney's Office will take on the fight.

Judge John Keegan estimates he has thrown out 300 to 400 photo-enforcement tickets since December.

"Ideally, I wish there would be a suitable case that would be appealed, or that the Legislature would fix the problem," he said.

The "problem," as Keegan sees it, is that the punishment for a traffic-camera ticket differs from the punishment for a ticket written by a state Department of Public Safety officer. In fact, it's less.

Keegan said that the fine and fees for a photo ticket total $181.50, whereas a misdemeanor-speeding ticket written on the same stretch of road by a DPS officer would result in a fee and fine totaling $320 and points against the driver's license.

"I found that very troubling, and most people were just paying the ticket to get it out of the way," Keegan said.

Since mid-December, Keegan has routinely thrown out photo tickets when drivers contest them in his court. According to Terry Stewart, a spokesman for the county's JPs, Keegan is the only one to do so on a regular basis.

On Dec. 9, Keegan issued a court order declaring the state law authorizing the photo-enforcement tickets

runs counter to the U.S. Constitution because it denies equal protection under the law and violates the state Constitution's clause on equal privileges and immunities.

Whether the court order has any effect remains to be seen.

Assistant Arizona Attorney General Richard Rice said, "The ruling is unusual in that it doesn't mention a particular case."

Instead, it is a blanket ruling aimed only at the state photo-enforcement statute and not at municipal photo enforcement.

Statewide, DPS is installing 100 fixed cameras, which are activated when a driver goes 11 miles or more above the speed limit. The department has issued about 150,000 tickets since the expansion began in September.

DPS has 60 days from the original violation date to file a complaint in Justice Court. Once filed, the agency has 120 days to hand-deliver a complaint to the driver. The complaint is dismissed if DPS doesn't meet the deadline, and the driver can contest the ticket.

Keegan is justice of the peace at the Arrowhead Justice Court in Surprise. Justices of the peace are elected and do not have to be attorneys. Keegan is not an attorney.

His jurisdiction extends over Peoria, Sun City and north Glendale. The photo-enforcement tickets that come into his court are mostly snapped on Loop 101.

Rice said that photo enforcement falls in the jurisdiction of the County Attorney's Office because the cases are heard in county justice courts.

A spokesman for the county attorney said that the court order would fall to the attorney general, because the tickets are written by DPS and because of the constitutionality issue. A spokesman for DPS, which monitors the cameras, would not comment.

As for the constitutional questions of the court order, Arizona State University law Professor Paul Bender said that it was unusual to claim unequal punishment when you are receiving the lesser sentence.

"It's usually the person who's treated worse who has the right to complain," Bender said. "I doubt if someone who is better off by being caught on film than he would have been if he had been caught by a cop should be able to complain that he was treated better than other similarly situated people."

Keegan disagreed.

"I felt in good conscience that I couldn't continue to accept the tickets," he said.

# EXHIBIT 2

# IN THE QUARTZSITE JUSTICE COURT OF THE STATE OF ARIZONA
# IN AND FOR THE COUNTY OF LA PAZ

JOE WINSLOW,

    Plaintiff,

vs.

MICHAEL ROTH
    Defendant

CASE NO: HR2011-00019

ORDER DISMISSING WITHOUT PREJUDICE

Upon further review by the Court of the above entitled case, it is determined that the Injunction against Harassment does not conform to Arizona statute or case opinion.

It is ORDERED DISMISSING the Injunction of Harassment issued the 19th day of July, 2011 and VACATING the HEARING scheduled for August 11, 2011 at 3:30 p.m. (Arizona time).

SO ORDERED THIS \_\_11\_\_ day of August, 2011.

_____
K. Slaughter
Justice of the Peace

I certify that a copy of the foregoing was mailed/faxed/placed in attorney's box, or personally served this _____ of August, 2011:

Mailed ✓ Plaintiff at last known address

Faxed & Mailed ✓ Defense Counsel: Atty. Julie LaBenz

By: _Pam_____, _____, Court Clerk,

Faxed to ShF 8-11-11 by Pam

2011 AUG 11 AM 11:17
[illegible stamp]