P. "Mike" Palmer
18402 N. 19th Ave., #109
Phoenix, AZ 85023
602-513-3738 (cell)
Pro Se



IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PETER MICHAEL PALMER,<br><br>Plaintiff<br><br>vs.<br><br>KENTON D. JONES, et al.<br><br>Defendants | 11-CV-1896-PHX-GMS<br><br>**PLAINTIFF'S<br>EXPEDITED MOTION FOR<br>DISQUALIFICATION OF<br>JUDGE SNOW<br>PURSUANT TO 28 U.S.C. § 455**<br><br>(Title 42 U.S.C. §1983) |

    Pursuant to 28 U.S.C. § 455 (a) & (b)(1) and Canon 3(C)(1)(a) of the Code of Judicial Conduct,[1] plaintiff makes a timely motion for Judge G. Murray Snow to disqualify himself from further participation in this action.

    Because this motion alleges bias, and because there are rulings pending before Judge Snow which would be forever tainted if ruled on before this one, plaintiff requests the Court prioritize this instant motion to the top of the stack, expediting it before those pending.

### MEMORANDUM AND POINTS OF AUTHORITIES

    While researching his previous motion, pro se plaintiff just learned that Judge

---

[1] Both are law. "The Code of Conduct is the law with respect to the ethical obligations of federal judges." *United States v. Microsoft*, 253 F.3d 34 ¶ 306 (D.C. Cir. 2001)

Snow was a judge in the Arizona Court of Appeals until 2008. (Per *YES ON PROP 200 v. Napolitano, 215 Ariz. 458, 160 P.3d 1216* and Exhibit 1.) As Judge Snow is aware, he worked with—and personally knows—at least four of the five Justice defendants. I submit Exhibits 2, 3, 4 and 5 for the (appellate) record and for the public's edification.

In fact, when he was an Arizona judge, Judge Snow worked in the same building in Phoenix with three of the Justice defendants. It is reasonable to presume he knew them then—and still knows them now—by sight and on a first name basis. While the fourth Justice defendant was a member of the Arizona Court of Appeals in Tucson at the time, it is reasonable to presume that Judge Snow also worked with him on occasion and presumably knows him by sight and on a first name basis too.

Plaintiff has not taken the time to research, but presumes it is easy to discover in which committees Arizona COA Judge Snow worked along side any four of the five Justice defendants. (If not all five.) It is reasonable for the public to presume Judge Snow went on occasional junkets with them. It is reasonable for the public to presume Judge Snow may even see defendants at Christmas parties and/or other social events, whether he still does or not.

Now, both 28 U.S.C. § 455 and Canon 3 of the Code of Conduct require "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which the judge has <u>a personal bias</u> or prejudice concerning a party . . . "

Clearly, working with and personally knowing four of the five Justice defendants constitutes a "personal bias." Clearly the public watching this case can reasonably question Judge Snow's impartiality. The defendants are Judge Snow's close acquaintances, if not friends.

Chief Supreme Court Justice Roberts observed ". . . there are a number of factors that could give rise to a probability or appearance of bias: friendship with a party or lawyer, prior employment experience, . . ." etc.

While he said "We have never held that the Due Process Clause requires recusal for any of these reasons . . . " he acknowledges ". . . they could be viewed as presenting a probability of bias." *Caperton v. A. T. Massey Coal Co.*, 129 S. Ct. 2252 (2009). This case is already a case of first impression. It may set yet another precedent here if Judge Snow chooses to not recuse.

Regardless of whether Judge Snow feels he's biased or not, that is not the test. As Justice Scalia said, "what matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal [i]s required whenever 'impartiality might reasonably be questioned.'" *Liteky v. United States*, 510 U.S. 540 (1994).

Consistent with this, regarding vacature, the Ninth Circuit has noted "the unfairness and expense which results from disqualification can be avoided in the future only if each judge fully accepts the obligation to disqualify himself in any case in which his impartiality might reasonably be questioned." *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991) at 735-36. This is such a case.

**NO DUTY TO SIT**

Lest the Court wrongly invoke it, there is no "duty to sit," strong or otherwise. This doctrine was changed by Congress more than 35 years ago, in 1974. Citing the Federal Judicial Center's *Recusal: Analysis of Case Law*, (Exhibit 6, p2), "The legislative history made it clear that in revising the statute [§ 455], Congress wished to remove the 'duty to sit.'"[2]

Chief Judge Kozinski demonstrated this fact when he recused himself sua sponte

---

[2] For the public's edification, the Federal Judicial Center is the research and education agency of the federal judicial system. It was established by Congress in 1967 (28 U.S.C. §§ 620-629), on the recommendation of the Judicial Conference of the United States. The many specific statutory duties of the Center and its Board fall into a few broad categories: 1) conducting and promoting orientation and continuing education and training for federal judges, court employees, and others; 2) developing recommendations about the operation and study of the federal courts; 3) conducting and promoting research on federal judicial procedures, court operations, and history.

in his infamous pornography trial. (Exhibit 7.) Judge Snow should follow this lead.

**NO HARM**

This case is still in its infancy. There will be no harm or delay to defendants by assigning another judge at this time. In fact, since it is only plaintiff suffering a constitutional deprivation, only I will be harmed by delay. Consequently, defendants should not be opposed to this motion to disqualify Judge Snow . . . unless of course, they see Judge Snow as their friend. In which case they will vigorously oppose this motion.

Given that pro se plaintiff just now learned of Judge Snow's conflict of interest, this is the absolute earliest possible time plaintiff could have brought this good faith motion.

**CONCLUSION**

Given the above, in the interest of justice, judicial economy, and for the sake of public confidence in the judiciary, Judge Snow must recuse from this action. There are other federal judges in this District who do not have a history of past relationships with defendants who can hear this case without any appearance of impropriety.

A proposed order is lodged separately.

SUBMITTED this _17_ day of November, 2011

By: _____
P. Michael Palmer
18402 N. 19th Ave., #109
Phoenix, AZ 85023
602-513-3738

**Certificate of Service:**

Copies of the foregoing mailed via
U.S. Mail on November _17_, 2011 to:

Pamela J. Linnins
1275 W. Washington
Phoenix, AZ 85007

# EXHIBIT 1

G. Murray Snow - Wikipedia, the free encyclopedia

# G. Murray Snow

From Wikipedia, the free encyclopedia

G. Murray Snow (born 1959) is a District Judge for the United States District Court for the District of Arizona.



**G. Murray Snow**

Judge on the United States District Court for the District of Arizona

Incumbent

**Assumed office**
2007

| | |
|---|---|
| Appointed by | George W. Bush |
| Preceded by | Stephen M. McNamee |

**Personal details**

| | |
|---|---|
| Born | 1959 (age 51–52) Boulder City, Nevada |

## Contents

- 1 Early life and education
- 2 Legal career
- 3 Federal career
- 4 Notable cases
- 5 Sources
- 6 References

## Early life and education

Snow was born in Boulder City, Nevada. He received a Bachelor of Arts degree from Brigham Young University (BYU) in 1984. He received a Juris Doctor degree from J. Reuben Clark Law School, at BYU in 1987.

## Legal career

Snow started his legal career as a law clerk for the Honorable Judge Stephen H. Anderson, United States Court of Appeals for the Tenth Circuit from 1987 to 1988. He was in private practice in Phoenix, Arizona from 1988 to 2002. He was a judge on the Arizona Court of Appeals from 2002 to 2008.

## Federal career

Snow was nominated by President George W. Bush on December 11, 2007, to a seat vacated by Stephen M. McNamee. He was confirmed by the United States Senate on June 26, 2008, and received his commission on July 23, 2008.

## Notable cases

1

# EXHIBIT 2

# Arizona Judicial Branch

Text Size: A A A

Search this website

AZ Courts | AZ Supreme Court | Court Admin/AOC | Public Services | Licensing & Regulation | Publications & Reports

Home / AZ Supreme Court / Meet The Justices / Chief Justice Rebecca White Berch

## Meet The Justices

### AZ Supreme Court

**Meet The Justices**
- Chief Justice Rebecca White Berch
- Vice Chief Justice Andrew D. Hurwitz
- Justice W. Scott Bales
- Justice A. John Pelander
- Justice Robert M. Brutinel
- Judicial History



## Chief Justice Rebecca White Berch

**EDUCATION:**
- M.A., Arizona State University, 1990
- J.D., Arizona State University College of Law, 1979
- B.S., Arizona State University, 1976

**PROFESSIONAL EXPERIENCE:**
- Chief Justice, Arizona Supreme Court, July 2009 - Present
- Vice Chief Justice, Arizona Supreme Court, June 2005 - June 2009
- Justice, Arizona Supreme Court, March 2002 - June 2005
- Judge, Arizona Court of Appeals, Division One, April 1998 - March 2002
- First Assistant Arizona Attorney General, 1996 - 1998
- Special Counsel to the Arizona Attorney General, 1995 - 1996
- Solicitor General for the State of Arizona, 1991 - 1994
- Director, Legal Writing Program, Arizona State University College of Law, 1986 - 1991, 1994 - 1995
- Associate and Partner, McGroder, Tryon, Heller, Rayes & Berch, 1979 - 1985

**SELECTED PUBLIC SERVICE:**
- Board of Directors, U.S. Conference of Chief Justices, 2009 - Present
- Co-Vice Chair, Education Committee, U.S. Conference of Chief Justices, 2010 - Present
- Co-Vice Chair, Meeting Planning Committee, U.S. Conference of Chief Justices, 2010 - Present
- Board of Trustees, National Conference of Bar Examiners, 2009 - Present

# EXHIBIT 3

Case 2:11-cv-01896-JAT   Document 25   Filed 11/18/11   Page 10 of 20

Vice Chief Justice Andrew D. Hurwitz



# Arizona Judicial Branch

Text Size: A A A

Search this website

**AZ Courts**   **AZ Supreme Court**   **Court Admin/AOC**   **Public Services**   **Licensing & Regulation**   **Publications & Reports**

Home / AZ Supreme Court / Meet The Justices / Vice Chief Justice Andrew D. Hurwitz

## Meet The Justices



### AZ Supreme Court

**Meet The Justices**

Chief Justice Rebecca White Berch

Vice Chief Justice Andrew D. Hurwitz

Justice W. Scott Bales

Justice A. John Pelander

Justice Robert M. Brutinel

Judicial History



## Vice Chief Justice Andrew D. Hurwitz

**EDUCATION:**
J.D., Yale University, 1972; Yale Law Journal, Note and Comment Editor, 1971-1972; Board of Editors, 1969-1971
A.B., cum laude, Princeton University, Public and International Affairs, 1968; Phi Beta Kappa

**JUDICIAL CLERKSHIPS:**
U.S. Supreme Court, Justice Potter Stewart, 1973-1974
U.S. Court of Appeals for the Second Circuit, Judge J. Joseph Smith, 1972-1973
U.S. District Court, District of Connecticut, Judge Jon O. Newman, 1972

**PROFESSIONAL EXPERIENCE:**
Vice Chief Justice, 2009 - Present
Justice, Arizona Supreme Court, 2003 to 2009
Partner, Osborn Maledon, 1995-2003
Judge Pro Tempore, Arizona Court of Appeals, Div. I, 1994, 1996 and 1998
Associate and Partner, Meyer Hendricks Victor Osborn & Maledon, 1974-1980, 1983-1995

**PROFESSIONAL AND CIVIC ASSOCIATIONS:**
American Law Institute, 2002-Present
Horace Rumpole Inn of Court, Master, 1997-Present
Arizona Center for Law in the Public Interest, Board of Directors, 1986-1988
Arizona Town Hall, 1992-2004
Arizona State University Research Park, Director, 1989-2003

1

# EXHIBIT 4

# Arizona Judicial Branch

Text Size: A A A

Search this website

AZ Courts  AZ Supreme Court  Court Admin/AOC  Public Services  Licensing & Regulation  Publications & Reports

Home / AZ Supreme Court / Meet The Justices / Justice W. Scott Bales

## Meet The Justices

**AZ Supreme Court**

Meet The Justices
Chief Justice Rebecca White Berch
Vice Chief Justice Andrew D. Hurwitz
Justice W. Scott Bales
Justice A. John Pelander
Justice Robert M. Brutinel
Judicial History



## Justice W. Scott Bales



**EDUCATION:**

J.D., magna cum laude, Harvard Law School,1983; Harvard Law Review, Board of Editors, 1981-1983

M.A., Economics, Harvard University,1980

B.A., summa cum laude, Michigan State University, 1978 Phi Beta Kappa, Phi Kappa Phi, Omicron Delta Epsilon

**CLERKSHIPS:**

U.S. Supreme Court, Justice Sandra Day O'Connor, 1984-1985

U.S. Court of Appeals for the Ninth Circuit, Judge Joseph T. Sneed III, 1983-1984

Office of the Solicitor General, U.S. Department of Justice, 1983

**PROFESSIONAL EXPERIENCE:**

Justice, Arizona Supreme Court, 2005-Present

Lewis and Roca LLP, 2001-2005

American Academy of Appellate Lawyers, 2003

Director's Award for Superior Performance as an Assistant U.S. Attorney, U.S. Department of Justice, Executive Office of U.S. Attorneys, 2001

Solicitor General, Office of the Arizona Attorney General, 1999-2001

Team AG Award, 2000

Assistant U.S. Attorney, District of Arizona, 1995-1999

Deputy Assistant Attorney General, Office of Policy Development, U.S. Department of Justice, 1998-1999

Special Investigative Counsel, Office of the Inspector General, U.S. Department of Justice, 1995-1997 (FBI Laboratory Investigation); U.S. Attorney General's Distinguished Service Award 1998; Inspector General's

# EXHIBIT 5

# Arizona Judicial Branch

Text Size: A A A

Search this website

AZ Courts | AZ Supreme Court | Court Admin/AOC | Public Services | Licensing & Regulation | Publications & Reports

Home / AZ Supreme Court / Meet The Justices / Justice A. John Pelander

## Meet The Justices

**AZ Supreme Court**

Meet The Justices

Chief Justice Rebecca White Berch

Vice Chief Justice Andrew D. Hurwitz

Justice W. Scott Bales

Justice A. John Pelander

Justice Robert M. Brutinel

Judicial History



### Justice A. John Pelander

**EDUCATION:**
LL.M. (Master of Laws in Judicial Process) University of Virginia School of Law, 1998
J.D., with high distinction and Order of the Coif University of Arizona College of Law, 1976
Executive Editor, Arizona Law Review, 1975-1976
B.A., cum laude, Wittenberg University, 1973

**JUDICIAL CLERKSHIP:**
U.S. Court of Appeals for the Ninth Circuit,
Judge Richard H. Chambers, 1976-1977

**PROFESSIONAL EXPERIENCE:**
Justice, Arizona Supreme Court, September 2009 – present
Judge, Arizona Court of Appeals, Division Two, May 1995 – August 2009
  Chief Judge, July 2004 – June 2009
  Vice Chief Judge, July 1999 – June 2004
Partner, Slutes, Sakrison, Grant & Pelander, P.C., 1984-1995
Partner, Slutes, Browning, Sakrison & Grant, P.C., 1981-1984
Associate and Partner, Slutes, Browning, Zlaket & Sakrison, P.C., 1977-1981

**HONORS AND AWARDS:**
Citation Award, Wittenberg University, 2010
Professional Achievement Award, University of Arizona James E. Rogers College of Law, 2007



1

# EXHIBIT 6

Alex Kozinski | U.S. judge in obscenity trial steps down - Los Angeles Times

# Los Angeles Times

ARTICLE COLLECTIONS

← Back to Original Article

## U.S. judge in obscenity trial steps down

*Alex Kozinski recuses himself amid an uproar over sexually explicit material that he posted on his website.*

June 14, 2008 | Scott Glover | Times Staff Writer

A federal appeals court judge on Friday stepped down from a high-profile obscenity trial in Los Angeles, three days after acknowledging that he had posted sexually explicit material on a publicly accessible personal website.

"In light of the public controversy surrounding my involvement in this case, I have concluded that there is a manifest necessity to declare a mistrial," wrote Alex Kozinski, chief judge for the U.S. 9th Circuit Court of Appeals. "I will recuse myself from further participation in the case and will ask the chief judge of the district court to reassign it to another judge."

On Wednesday, Kozinski suspended the trial of Hollywood filmmaker Ira Isaacs to allow the prosecutor to explore what he saw as "a potential conflict of interest concerning the court having a . . . sexually explicit website with similar material to what is on trial here."

Prosecutor Kenneth Whitted, who had expressed dismay with one of Kozinski's earlier rulings in the case, declined to comment on the judge's recusal.

Isaacs, the defendant, said he was disappointed Kozinski was no longer the judge.

"I thought he was a fair judge," he said. "I feel terrible that my trial caused this information to come out."

He added, though, that it was somehow fitting for the trial, which he predicted would be a spectacle from the start. Isaacs planned to argue that his hard-core videos depicting acts of bestiality and defecation were works of art and therefore not legally obscene. Jurors spent several hours Wednesday watching the videos before the trial was interrupted.

"This whole trial is one big piece of performance art," Isaacs said. "I just can't imagine what's going to happen next."

The halting of Isaacs' trial came after The Times published an article on its website describing some of the sexually themed content on the judge's website. In an interview Tuesday, Kozinski had acknowledged posting the images but said he believed it was a private storage area that could not be accessed by the public. Had he known it was not properly protected, he said, he would have been more careful about the content he kept there. He acknowledged that some of the material was inappropriate but defended other items as funny. He said he must have uploaded some of the material by accident.

Following the interview, he blocked access to the site. After the story broke, the judge issued a statement saying his adult son told him that he may have placed some of the controversial material on the website.

1

In addition to declaring a mistrial, Kozinski -- a nationally respected judge who has been mentioned as a potential Supreme Court candidate -- also called for an investigation of himself. He issued a statement Thursday asking the Judicial Council of the 9th Circuit to "initiate proceedings" in response to The Times article.

Laurie Levenson, a Loyola Law School professor and former federal prosecutor in Los Angeles, said Kozinski has taken the right steps to put the issue behind him.

"The best thing for him to have done was to extricate himself as much as possible, and I think that's what he's done," she said.

Before it was taken down Tuesday, visitors to http://alex.kozinski.com were greeted with the message: "Ain't nothin' here. Y'all best be movin' on, compadre." But adding "/stuff" to the address revealed a hodgepodge of material, including music files, essays, cartoons and family photos.

Kozinski himself occasionally linked the public to his site. For example, in a letter published on the New York Times website in November 2005, he directed readers to his site so they could see an old clip of him on "The Dating Game" show.

More recently, the files containing the sexual content were found by Cyrus Sanai, an attorney from Beverly Hills, who then alerted The Times. Sanai said he was conducting research in connection with a dispute he was having with Kozinski when a Google search led him to a directory on the judge's website containing the material.

Many of the items on the website, some of which the judge said he received and sent via e-mail, are intended to be crudely humorous.

One such item is a photo of two women seated in what appears to be a cafe with their skirts hiked up to reveal their pubic hair. Behind them is a sign reading "Bush for President." Kozinski defended that photo as "a funny joke."

Among other items were a photo of two nude women painted to look like cows, a video of an encounter between a half-dressed man and a sexually aroused farm animal, a striptease slide show featuring a transsexual, a series of photos of women's crotches in snug-fitting clothing or underwear and a step-by-step pictorial of a woman shaving her pubic hair.

Some nonsexual material on the website might also be considered demeaning to women: There was a mock mathematical equation presented as "proof that girls are evil," and a photo of a 1950s-era mother and her daughter sharing a book titled, "Becoming a Bitch."

Legal experts who had called on Kozinski to recuse himself from the Isaacs case said it wasn't necessarily a problem that the judge had collected sexually explicit material but that he was reckless in allowing it to be discovered.

"The real problem is that once this came to light, it made people question whether he was the right judge to handle the case," Levenson said. "And that's a question that would never have arisen if he had not been so reckless in how he handled these materials."

--

scott.glover@latimes.com

# EXHIBIT 7

# Recusal:
## Analysis of Case Law Under 28 U.S.C. §§ 455 & 144

Federal Judicial Center
2002

This publication was undertaken in furtherance of the Federal Judicial Center's statutory mission to develop and conduct education programs for judicial branch employees. The views expressed are those of the authors and not necessarily those of the Federal Judicial Center.

*Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144*

## II. History of Section 455

The first federal judicial disqualification statute dates back to 1792[4] and was later amended several times until it became section 20 of the Judicial Code of 1911.[5] In 1948, the U.S. Congress reconstituted and recodified it as section 455. The 1948 version of section 455 stated that "[a]ny justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein."[6]

In subsequent years, Congress perceived several problems with this statute. First, determining whether a conflict merited disqualification was entirely subjective—a judge might decide, for instance, that he could maintain his impartiality even if he had a substantial financial stake in the outcome of the case or if a family member were a litigant. Second, the statute's vague language ("so related to or connected with any party or . . . attorney") provided little guidance. Finally, a judicial "gloss" on section 455 created a "duty to sit" whereby judges resolved close questions against recusal.

In order to resolve these issues, in 1974 Congress enacted an extensive revision of section 455[7] based on the 1972 American Bar Association Code of Judicial Conduct, which was adopted with only slight modifications by the Judicial Conference in 1973 as the Code of Conduct for United States Judges. The legislative history made it clear that in revising the statute, Congress wished to remove the "duty to sit."[8] The wording of section 455 now parallels that of Canon 3C of the Code.[9] The current version of section 455 reads:

---

4. Act of May 8, 1792, ch. 36, § 11, 1 Stat. 278.
5. Act of Mar. 3, 1911, ch. 23, § 20, 36 Stat. 1090.
6. Act of June 25, 1948, ch. 646, § 455, 62 Stat. 908.
7. Dec. 5, 1974, Pub. L. 93-512, § 1, 88 Stat. 1609.
8. H.R. Rep. No. 1453, 93d Cong., 2d Sess. 5, *reprinted in* 1974 U.S. Code Cong. & Admin. News 6351, 6355.
9. While Canon 3C of the Code of Judicial Conduct uses gender-neutral lan-