P. "Mike" Palmer
18402 N. 19th Ave., #109
Phoenix, AZ 85023
602-513-3738 (cell)

Pro Se

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF ARIZONA

PETER MICHAEL PALMER,

    Plaintiff,

vs.

KENTON D. JONES, et al.,

    Defendants.

11-CV-1896-PHX-GMS

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISQUALIFY ATTORNEY GENERAL**

(Title 42 U.S.C. §1983)

---

Pro se plaintiff files this reply under protest due to a Catch-22 situation. On the one hand, I am arguing that the Attorney General ("AG") must be disqualified from appearing for defendants. Thus, by replying to the AG's response, the Court might conclude I've waived my motion/objection to the AG appearing for defendants. I have not.

On the other hand, if I do not reply, the Court might conclude I agree with the AG's response. I do not.

Not wishing to forfeit a right to object, plaintiff files this Reply to Defendant's [sic] Response.

**OVERVIEW**

Opposing counsel continues to misrepresent the facts, misquotes case law and continues to create fallacious straw man arguments.

Happily, pro se plaintiff found two federal cases with good history which are

instructive regarding disqualification of an AG by an opposing party.

Also, new facts have come in since the filing of this motion which further buttress my motion, further precluding the AG from appearing for defendants.

I will begin with these new facts, and then refute opposing counsel's arguments while folding in the instructive cases to aid the Court.

### NEW FACTS

In the interest of judicial economy, especially since this is an Emergency action, to mitigate the necessity for a later motion for reconsideration, pro se plaintiff presents new facts not available beforehand.

Plaintiff has learned that Michael Roth of Quartzsite, Arizona, who has suffered the same injury at the hands of the defendant Justices (ZAC, Doc. 5 ¶ 61), recently filed a civil rights complaint with the AG against the defendant Justices in accordance with A.R.S. § 41-192(A)(7). (Exhibit 1) The AG cannot investigate the defendant Justices in a civil rights complaint and simultaneously defend them in court for the same civil rights complaint. Hence, a genuine conflict of interest.

Similarly, plaintiff recently learned, via a phone call to the Arizona Department of Public Safety ("D.P.S."), that my name has, in fact, been put on the FBI's NCIC database, listing me as a criminal Domestic Violence offender as a result of defendant Jones' civil action. Plaintiff dutifully obtained a subpoena from the Clerk of Court to obtain a printout of the D.P.S. computer screen. Plaintiff had it served on the appropriate agent of the D.P.S. and filed a Notice of such. (Doc. 28)

DPS has responded and refuses to comply with the subpoena, citing Arizona law. (See Exhibit 2.) Since this is material evidence for this complaint, I plan to move the Court for a motion to compel.

But, as stated in my Notice, this puts the AG in an impossible position. By statute, the attorney general is legal advisor to DPS. (A.R.S. § 41-192(A)(1)) Therefore, the attorney general will be advising a non-party how to respond to a subpoena in the same

case where the attorney general represents a party.

## REBUTTAL TO ARGUMENTS

<u>As to Judicial Immunity & Entitled to Representation</u>

Frankly, I can't follow opposing counsel's logic. While it's true that I argue that because defendants have acted outside the scope of their official duties, the AG does not have a statutory duty to represent them, opposing counsel adds the condition of "judicial immunity" to the mix. Counsel rehashes arguments from her Reply in Support of Motion to Dismiss (Doc. 26) eventually concluding with the statement, "As judicial immunity remains intact, the Defendants are entitled to AG representation."

But whether defendants have judicial immunity or not is not germane to plaintiff's instant motion. The issue here is not whether defendants are entitled to representation.[1] Rather, the narrow focus is whether the AG can lawfully and ethically give them representation.

But if opposing counsel is arguing that if the defendants are not immune from this suit, then they are not entitled to AG representation, I'll happily accept the conclusion.

Opposing counsel goes on to quote new material from Doc. 26, *Swarthout v. Cooke*. *Swarthout* is wholly off point here (a specific liberty interest created by state law which was outside the jurisdiction of the federal court). Still, since she brought it up, it helps make my case in my complaint regarding due process. Quoting at *861, "As for the Due Process Clause, standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived [yes, my Second Amendment right] and if so we ask whether the procedures followed by the State were constitutionally sufficient." [It's the State that caused the constitutional violation!]

Opposing counsel tries to apply *Swarthout* by mischaracterizing the argument in

---

[1] I disagree with the premise. This is not a criminal trial. Neither the federal or state constitutions say defendants are "entitled" to representation.

1 my complaint. I trust the Court sees that the argument is not whether the Arizona
2 Supreme Court (i.e., defendant Justices) are empowered to make administrative Rules.
3 The argument is about one particular Rule.[2]

4     Opposing counsel argues that defendants are entitled to representation by the AG,
5 and only the AG, by way of A.R.S. § 41-192(A)(1). But that is not correct because that
6 law is not absolute or binding per A.R.S. § 41-192(F) as I stated in my motion. (Doc. 23,
7 7:8-15)

8     Opposing counsel looks to exemptions in § 41-192(E) to beef up her strawman
9 argument. Her argument is that, because the judiciary is not included in the list of
10 exemptions, the judiciary must be defended by the AG. That is false.

11     First, § 41-192(E) specifically calls out (F), above, as an exemption. But (E) is
12 about state agencies. That is distinct from a state "department," defined in Article III,
13 like the judiciary. So (E) is not on point and counsel's argument carries no weight.

14     As an aside, it might be another fascinating precedent for this Court to rule
15 whether § 41-192(A)(1) is, in itself, a violation of Article III of the Arizona State
16 constitution, since it calls for the executive to be "the legal advisor" to the judiciary!

17     Counsel sites *State ex rel. Frohmiller v. Hendrix* to argue something off point
18 about the legislature's method of preventing duplication and waste of state salaries.
19 What? *Frohmiller* was about an in-State prosecution, where a state agency opted to
20 prosecute in house, bypassing the AG. It is not about federal defendants. Still, there the
21 court noted, "The records of this court, however, show that the deputy state auditor was
22 at the time a regularly qualified and licensed attorney of the bar of Arizona" and thus,
23 could act at bar for the agency. The same is true here. The defendants here are all

---

[2] As an extreme example, defendants are not empowered to make a Rule calling for the death penalty—the ultimate violation of constitutional rights—in an Injunction Against Harassment. As a more practical example, not even defendant Jones sought to deprive me my First Amendment right to blogging. Still, he felt he could deprive me my Second Amendment right.

qualified and licensed attorneys. Even if the federal court has jurisdiction to consider this dicta, there will be no duplication or waste if defendants defend themselves instead of the AG defending them.

Opposing counsel's cite of *Hurles v. Superior Court* cite is just plain wrong. The AG here merely quoted the AG there. "The Attorney General, claiming that the trial judge's status as a nominal respondent entitles her to defend the validity of her order . . . " (*332) But what the court actually ruled was, "Our holding that the judge's responsive pleading was improper **makes it unnecessary for us to decide the propriety of the Attorney General appearing on her behalf.**" So then, *Hurles* does not find a judge is entitled to representation by the A.G. as this A.G. claims.[3]

As to Standing to raise Conflict of Interest

Opposing counsel states as fact that "It is long established that a party must have standing, a threshold issue, to give a court jurisdiction to hear a motion, **including a motion for disqualification of opposing counsel**." (Emphasis mine.) But she does not cite any authority for the last phrase of her claim. Instead she cites cases involving standing of various "environmentalist wacko" groups.[4]

As to standing in general, it seems absurd that I should have to prove standing at this late date, an issue raised for the first time here.[5] In addition to documentation in my ZAC and my Response to Defendants' Motion to Dismiss (Doc's. 5 and 22 respectively), this Court has already effectively granted standing. Using counsel's own logic, since the Court has ruled on my petition for a Temporary Restraining Order and my subsequent

---

[3] Also, *Hurles* took the state as a real party of interest. I have argued previously that the state is not a real party here. See Doc. 22, 10:15-27.

[4] Quoting federal Judge Richard J. Leon of the D.C. District, "*Lujan* addressed the standing of environmental groups . . ." *Hettinga v. U.S.* 770 F.Supp.2d 51 at *56.

[5] I'm not a judge in this world, but it seems to this pro se litigant the "threshold issue" of standing should have been raised in defendants' motion to dismiss, per counsel's own cite of *Wilbur v. Locke* at *1105.

1 motion to reconsider the denial thereof, it has heard my motions. As such, the Court has
2 taken jurisdiction and therefore, has conveyed standing.[6]

3 Undeterred, opposing counsel overemphasizes dicta (and perhaps a poor choice of
4 words) in an old case, *Kasza v. Browner*. Quoting her, she represents the Ninth as saying,
5 "it is difficult to understand how a party could have standing to complain about another's
6 representation when that representation has nothing to do with the complaining party."

7 Even if the quote from the Ninth were accurate and in context (it's not), AG's
8 representation of defendants has everything to do with this complaining party. The AG is
9 an elected official, the chief legal officer of the state. As such, he is MY attorney too.
10 While he doesn't represent me as a named individual, he is obligated to represent me and
11 all Arizona residents nevertheless, especially when the constitution is under attack.

12 Regardless, the quote above is not accurate. Here's the actual quote from the
13 Ninth: "We have difficulty seeing how [plaintiff-appellant] has standing to complain
14 about **a possible** conflict of interest arising out of **common representation** of
15 defendants **in different civil actions**, having nothing to do with her own representation."
16 In my instant case, the defendants are not in a different civil action but are in mine. And
17 I've enumerated actual conflicts of interest in Doc. 23, 3-5.

18 Opposing counsel did not get the next quote quite right either. The Ninth said,
19 "As a **general** rule, courts do not disqualify an attorney on the grounds of conflict of
20 interest unless the former client moves for disqualification." But that is only a general
21 rule, not an absolute. (Especially not absolute in a precedent setting case of first
22 impression.) In fact, the Ninth goes on to consider whether there was a "basis" for
23 conflict of interest in opposing attorneys, implying it might have acted to sustain
24 disqualification had it found such.

25 Which brings us to two on-point cases. In the recent case of *Pacheco v. Mitchell*
26 *Associates*, 2009 WL 1606066 (N.D.N.Y.), federal magistrate Judge Treece wrote "A

---

28 [6] The Court did not cite lack of standing in either of its denials.

1  motion to disqualify an attorney is within the broad discretion of the court. Since
2  disqualification may impose a serious impact on a party's right to an attorney of his
3  choice, it should only be imposed when continued representation may pose a significant
4  risk of taint upon the trial. [Plaintiff speaking: This part about "a party's right to an
5  attorney of his choice" appears to be dicta. It is not supported by law for civil matters.
6  The Sixth Amendment has been read to give such a right to choice of counsel only to
7  criminal defendants.] Generally speaking, motions to disqualify are viewed with disfavor
8  and the party seeking disqualification must meet a high standard of proof before
9  disqualification will be granted. In deciding a motion to disqualify, courts often seek
10  guidance from the American Bar Association (ABA) and state disciplinary rules . . . "
11  *Kasza* has this last part too, acknowledging that local state Supreme Court rules govern
12  the ethical conduct of the attorneys representing the defendants.
13      But one implication of this is that the defendant Justices would be the ones
14  judging their own attorneys were I (or this Court) to bring an ethics complaint against
15  them. I will amplify this conflict of interest shortly.
16      *Pacheco* then drifts off into specific questions of successive representation. Still,
17  the central issue was conflict of interest, which shows disqualification is possible.
18      Now, more to the point is the case of *Aruanno v. Booker*, 2009 WL 1173438
19  (D.N.J.) In *Aruanno*, as in this instant matter, a pro se plaintiff sought to have a state AG
20  disqualified from representing a state defendant in an § 1983 action. There, as this
21  instant matter, state statutes were cited which authorized the AG to provide
22  representation for state actors. (*2) But the Court cited the same exemptions that I have,
23  that a state actor is not entitled to representation if the act or omission was not within the
24  scope of employment, or the defense of any action would create a conflict of interest
25  between the State and the state actor. In those instances, the Court acknowledged the
26  Attorney General may refuse to provide for the defense of an action.
27      Unlike here, the pro se litigant Aruanno was a prison inmate who did not
28

articulate any specific conflict of interests. (Frankly, his suit seems to be a "hail Mary.") Left with no specifics, the court essentially abstained and deferred to the Attorney General's self evaluation that he had no conflict of interest. But as with every other attempt to abstain, abstention will not work here. It is not viable in this unique case.

The logic is the same as it's always been. It is the Justices of the Arizona Supreme Court who ultimately decide ethics complaints, as in the current state matter to disbar former Maricopa County Andrew Thomas. So to abstain and defer to the AG's self-evaluation of ethics would put the defendant Justices in the position of judging their own AG for his ethics![7]

In fact, after conferring with the Arizona State Bar's Consumer Assistant Program specialist, I learned that the Arizona State Bar is an arm of the Arizona Supreme Court. That means that, were he so inclined, the AG cannot even call the Bar's Ethic Hotline for advice on this matter to ask if the Bar sees a conflict of interest. For calling the defendants for legal advice is a conflict of interest itself!

<u>On the Attorney General as an Expert Witness</u>

While it is true that plaintiff has not "retained" the AG as an expert, a F.R.Civ.P. Rule 26(a) Initial Disclosure is premature at this time. If I understand it right, no deadlines have been set via a Rule 26(f) conference requiring such. (Ironically, while opposing counsel wants a premature disclosure here, she argues later that a Rule 56 motion is premature.) In any event, it is not necessary to disclose an individual if their use "would be solely for impeachment." (Rule 26 (a)(1)(A)(I)). Counsel does not know what proposed testimony I might solicit from the AG.

Counsel goes on to cite *In re Snyder* to assert that "an unwilling expert cannot be

---

[7] This leaves three options as I see it. 1) The defendants can hire counsel from out of state, who are bound by Arizona ethics rules by law, but held accountable to their own state court. 2) The defendants can defend themselves. 3) Instead of fighting, the defendants can do the right thing, repeal their unconstitutional Rule, and end this action.

forced to testify as to newly formed opinions." That's not what *Snyder* says.

First off, *Snyder* is from 1987. The Rules of Civil Procedure have been amended numerous times since then. In fact, there is no longer a stand alone Rule 26(b)(4), cited in *Snyder* in the passage to which counsel apparently refers. So *Snyder* may be wholly inapposite.

Next, *Snyder* does not say an unwilling expert cannot be forced to testify. Rather, in the first paragraph, the judge wrote, "This Order addresses the question whether a court can compel the author of a research report to serve as a witness in a lawsuit when the author is a stranger both to the events and to the parties involved in the suit." The AG is neither a stranger to the events or to the parties involved in this instant suit.

Moreover, a plain reading of F.R.Civ.P. 26(b)(4)(a) says, "A party may depose **any person** who has been identified as an expert whose opinions may be presented at trial." Clearly, the AG is an expert.

In *Snyder*, the only valid reason the court allowed for quashing a subpoena of an expert witness was that to testify would have been "unduly burdensome." That is not an issue here.

Counsel then cites *U.S. v. Moran*. Now, *Moran* was a criminal matter. Pro se litigant is not at all sure how applicable that case is to a civil procedure like mine, and a case of first impression at that. Nevertheless, while plaintiff realizes that ultimate issues of law are ultimately for a judge to decide (and so, per *Moran,* "'an expert witness cannot give . . . an opinion on an ultimate issue of law'"), the Ninth counters with "It is well-established that expert testimony concerning an ultimate issue is not per se improper." *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051 (9th Cir. 2008). The AG can testify.

One thing is certain: If the AG is not disqualified, this case may be forever tainted. Prudence and an abundance of caution says to err on the safe side and disqualify the Attorney General for appearing for defendants.

On Motion for Summary Judgment

While admittedly not articulated well, pro se plaintiff simply offered the Court that it might consider this instant motion as an ex parte Rule 56 motion (if there is such a thing) as an expediency in a Christian offer to help the AG from sinning further. (By not having to involve himself further.)

While it's moot now, I am content to leave it to the Court to determine if such a motion was premature. As a point of interest, an attorney acquaintance of mine filed a motion for summary judgment in this district (without a separate SOF) while a motion to dismiss was pending in his suit against the Governor. (11-CV-00495-ROS-PHX, Doc. 30)

As for any violations of Local Rules, LRCiv 83.6 provides for suspension of the rules as the Court sees fit.

THEREFORE, for any of the foregoing logic and given the actual conflicts of interest documented herein, it is necessary to disqualify the Attorney General from appearing on behalf of the defendants. While the Court might rule that some issues presented are not yet fully ripe for adjudication, it would spoil ("significantly taint") this action forever, and cause serious harm to plaintiff, were the Court to later find these salient issues in favor of plaintiff. Indeed, plaintiff is harmed if he cannot call the AG as a witness. The most conservative action is to act now and disqualify the AG.

DATED this 13 day of December, 2011

By: _____
P. Michael Palmer
Pro se

**Certificate of Service:**

Copies of the foregoing mailed via
U.S. Mail on December __13__, 2011 to:

Pamela J. Linnins
1275 W. Washington
Phoenix, AZ 85007

# EXHIBIT 1

| ARIZONA ATTORNEY GENERAL'S OFFICE<br><br>TOM HORNE<br>ATTORNEY GENERAL<br>www.azag.gov |  | CIVIL RIGHTS INTAKE<br>QUESTIONNAIRE<br><br>Main Phone: (602) 542-5263<br>Facsimile: (602) 542-8885<br>TDD: (602) 542-5002<br>Toll-Free: 1-877-491-5742 |
|---|---|---|

(Please type or print legibly in ink. You may use additional paper to complete your answers to the following questions.)

1. YOUR NAME AND ADDRESS

   MICHAEL ROTH
   PO BOX 422
   QUARTZSITE AZ 85346

   Home Phone: 928.927.8888
   Business Phone: 602.791.5401 CELL

2. NAME AND ADDRESS OF THE PERSON OR BUSINESS AGAINST WHOM YOU ARE COMPLAINING.

   JP JUDGE KAREN SLAUGHTER
   JUSTICES OF THE SUPREME COURT OF ARIZONA

   Phone:
   Fax:

3. PLEASE INDICATE WHICH OF THE FOLLOWING CATEGORIES APPLIES TO YOUR COMPLAINT AGAINST THE PERSON OR BUSINESS LISTED IN #2 ABOVE. CIRCLE ALL AREAS THAT YOU BELIEVE APPLY TO YOUR SITUATION.

    A. Employment

        i. Race
        ii. Color
        iii. National Origin
        iv. Religion
        v. Sex/Gender (includes Pregnancy, Sexual harassment)
        vi. Age
        vii. Disability
        (viii. Retaliation)  ???
        ix. Genetic Information

    B. Housing

        i. Race
        ii. Color
        iii. National Origin

    iv. Religion
    v. Sex/Gender
    vi. Disability
    vii. Familial Status (Pregnant or children under age 18)
    viii. Retaliation

 C.  Public Accommodations

    i. Race
    ii. Color
    iii. Religion
    iv. Sex
    v. National Origin
    vi. Ancestry
    vii. Disability
    viii. Retaliation

 E.  Voting

    i. Race
    ii. Color
    iii. Religion
    iv. Sex
    v. National Origin
    vi. Ancestry
    vii. Disability

4. WHEN DID THE ACT OR INCIDENT YOU ARE COMPLAINING ABOUT TAKE PLACE?

First time: JULY 19, 2011
Last time: Aug 11, 2011
Continuous: (Yes or No.)

UNLESS STOPPED IT WILL HAPPEN TO ME AGAIN OR OTHERS.

5. THOROUGHLY EXPLAIN WHAT HAPPENED TO YOU. STATE WHAT HAPPENED, WHEN IT HAPPENED, THE NAMES OF PEOPLE INVOLVED, NAMES OF WITNESSES, AND ANY OTHER INFORMATION. PLEASE TELL YOUR STORY OF WHAT HAPPENED TO YOU FROM THE BEGINNING TO THE END. ALSO, PLEASE ATTACH TO THIS QUESTIONNAIRE ANY DOCUMENTS THAT WILL HELP EXPLAIN WHAT HAPPENED TO YOU.

*See attachments*

6. HAVE YOU FILED A COMPLAINT WITH ANY OTHER FEDERAL, STATE OR LOCAL AGENCY TO COMPLAIN ABOUT THIS DISCRIMINATION? IF THE ANSWER IS YES, PLEASE STATE THE NAME AND ADDRESS OF THE AGENCY.

*No*

7. DO YOU HAVE AN ATTORNEY? IF THE ANSWER IS YES, PLEASE TELL US THE NAME AND ADDRESS OF YOUR ATTORNEY.

*No*

#975166

# EXHIBIT 2



# ARIZONA DEPARTMENT OF PUBLIC SAFETY

2102 WEST ENCANTO BLVD.   P.O. BOX 6638   PHOENIX, ARIZONA 85005-6638   (602) 223-2000

*"Courteous Vigilance"*

JANICE K. BREWER    ROBERT C. HALLIDAY
Governor                      Director

December 8, 2011

Mike Palmer
18402 N. 19th Avenue, #109
Phoenix, AZ  85023

Dear Mr. Palmer:

The Department of Public Safety is in receipt of your Subpoena to produce documents, which is not dated and not signed, in a civil action case number 11-CV-1896-PHX-GMS. The documents being requested are printouts of an NCIC record for Peter Michael Palmer, date of birth 03/18/56.  The release of this information by the Arizona Department of Public Safety would be in violation of Arizona Revised Statute §41-1750, which prohibits the release of any information or records obtained from the Arizona Criminal Justice Information System (ACJIS). Therefore the records will not be released to you pursuant to the above mentioned statute.

However, you may contact the Federal Bureau of Investigation at 304-625-3878 to review and challenge your file with them.

If you have any questions please contact me at 602-223-2702.

Sincerely,

Teresa Fuentes, Documents Custodian
Arizona Department of Public Safety
602-223-2702