FILED ___ LODGED
___ RECEIVED ___ COPY

DEC 1 8 2011

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

P. "Mike" Palmer
18402 N. 19th Ave., #109
Phoenix, AZ 85023
602-513-3738 (cell)

Pro Se

# IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF ARIZONA

PETER MICHAEL PALMER,

           Plaintiff,

vs.

KENTON D. JONES, et al.,

           Defendants.

11-CV-1896-PHX-GMS

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION TO DISQUALIFY JUDGE SNOW**

(Title 42 U.S.C. §1983)

## OVERVIEW

Plaintiff replies to defendants' response, follows through with new evidence alluded to in my motion, and quotes a recent ruling on Judicial Bias from the Ninth Circuit from a case in Arizona.

## MEMORANDUM AND POINTS OF AUTHORITIES

Defendants see bias favorable to them

It's said you can't make an argument from silence. Even though defendants were silent in their response, they have not been entirely silent on this matter.

After I filed my complaint, I received the usual *Consent to Exercise of Jurisdiction by a US Magistrate Judge (*form AO 85) from the court. Instead of mailing the consent form to one defendant and asking them to forward it along to the other five and then mail it to the Clerk, I waited for the appearance of counsel. (In the expectation that defendants would use one attorney, which would be easier to deal with logistically.)

1   Immediately after learning of counsel (via Defendant's [sic] Motion to Dismiss
2   (Doc. 18), received in the mail on Wednesday or Thursday), I sent opposing counsel the
3   form a few days later (Saturday), along with a letter of explanation.

4   In my letter (computer copy attached in Exhibit 1), I sent the Ninth Circuit's Order
5   that this District was under a judicial emergency due to Judge Roll's murder in Tucson. I
6   suggested it would be a courtesy to the court to consent to a magistrate judge, especially
7   in light of what a federal judge told some litigants in his court. (See letter.)

8   On the assumption opposing counsel desires to be courteous to the court, one
9   would expect opposing counsel would be indifferent to consent.

10   Nevertheless, in an email follow up (Exhibit 2), opposing counsel declined to
11   consent to a magistrate judge. Why? The inference—and the appearance— is that
12   defendants wish to keep their former colleague as judge here.

13   Committee Assignments

14   In Plaintiff's Motion to Disqualify Judge Snow, I presumed it was easy to discover
15   in which committees Judge Snow worked along side any of the defendants. (Doc. 25,
16   2:11) I have obtained such discovery.

17   Of course, Judge Snow knows whom he knows. But for the record, per Exhibit 3,
18   Judge Snow worked with defendant Judge Brutinel in the *Task Force on the Code of*
19   *Judicial Conduct*. And Judge Snow worked with defendant Judge Bales on the
20   *Committee on Judicial Education and Training*. At a minimum, these associations
21   establish the specter of personal bias toward defendants, requiring disqualification, per
22   the Ninth Circuit.

23   The Ninth on Judicial Bias

24   Given that Judge Snow has served on the *Task Force on the Code of Judicial*
25   *Conduct*, the following quotes should not be necessary. But for the record, I quote the
26   Ninth Circuit on recusal.

27   Now, Chief Judge Kozinski has said, "Whenever I see a block quote I figure the
28

1  lawyer had to go to the bathroom and forgot to turn off the [copy/paste] function on his
2  computer. Let's face it, if the block quote really had something useful in it, the lawyer
3  would have given me a pithy paraphrase."[1]

4  It is true that I will cut and paste the following from the Ninth. But considering I
5  would have said all this myself (and did say some of this sua sponte in my motion, Doc.
6  25), on the assumption that no one can say it better than the Ninth; and that it is, by
7  definition, pithy; and that the same words carry more weight coming from the Ninth than
8  from me, I submit the following text.

9  This is from *Hurles v. Ryan*[2], an "exceptional" case of first impression, as here.
10  Most citations omitted. <start of block quote at *1309>

11  A. Clearly Established Supreme Court Precedent

12  "A fair trial in a fair tribunal is a basic requirement of due process." Indeed, the
13  "legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality
14  and nonpartisanship." This most basic tenet of our judicial system helps to ensure both
15  litigants' and the public's confidence that each case has been fairly adjudicated by a
16  neutral and detached arbiter. An appearance of impropriety, regardless of whether such
17  impropriety is actually present or proven, erodes that confidence and weakens our system
18  of justice.

19  While most claims of judicial bias are resolved "by common law, statute, or the
20  professional standards of the bench and bar," the Due Process Clause of the Fourteenth
21  Amendment "establishes a constitutional floor." To safeguard the right to a fair trial, the
22  Constitution requires judicial recusal in cases where "the probability of actual bias on the
23  part of the judge or decision maker is too high to be constitutionally tolerable." "The
24  Court asks not whether the judge is actually, subjectively biased, but whether the average

25  _____

26  [1] Alex Kozinski, *How You Too Can . . . Lose Your Appeal*, 1992 BYU L. Rev.
27  325; Montana Lawyer, October 1997, 23-OCT Mont. Law. 5

28  [2] 650 F.3d 1301 (9th Cir. 2011)

1   judge in his position is likely to be neutral, or whether there is an unconstitutional

2   potential for bias." Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 129 S.Ct. 2252,

3   2262, 173 L.Ed.2d 1208 (2009). [FN3]

4

5   FN3. We cite to Caperton, the Supreme Court's recent decision regarding
    judicial bias, throughout this opinion. Although, as the dissent points out,

6   Caperton is not controlling insofar as it announces new "clearly established
    Supreme Court precedent" that post-dates the state court decision at issue

7   here, we refer to it where we find its analysis of established Supreme Court
    jurisprudence helpful to our resolution of the case. We read Caperton to

8   announce no new rule of law that would affect our analysis here.

9       (*1310) . . . A claimant need not prove actual bias to make out a due process

10  violation. Indeed, the Supreme Court has pointed out that it would be nearly impossible

11  for a litigant to prove actual bias on the part of a judge. Caperton, 129 S.Ct. at 2262-63;

12  ("[W]hen the trial judge is discovered to have had some basis for rendering a biased

13  judgment, his actual motivations are hidden from view, and we must presume the

14  process was impaired." It is for this reason that the Court's precedents on judicial bias

15  focus on the appearance of and potential for bias, not actual, proven bias. Due process

16  thus mandates a "stringent rule" for judicial conduct, and requires recusal even of judges

17  "who would do their very best to weigh the scales of justice equally" if the risk of bias is

18  too high.

19      In determining what constitutes a risk of bias that is "too high," the Supreme

20  Court has emphasized that no mechanical definition exists; cases requiring recusal

21  "cannot be defined with precision" because "[c]ircumstances and relationships must be

22  considered." . . . The Supreme Court has just re-affirmed this functional approach. See

23  Caperton, 129 S.Ct. at 2265-66. . . .

24      The Supreme Court's judicial bias doctrine has evolved as it confronts new

25  scenarios "which, as an objective matter, require recusal." Caperton, 129 S.Ct. at 2259.

26  The most basic example of probable bias occurs when the judge " `has a direct, personal,

27  substantial pecuniary interest in reaching a conclusion against [one of the litigants].' " . . .

28

1   (*1311) However, financial conflicts of interest are not the only relevant conflicts for

2   judicial bias purposes. See Caperton, 129 S.Ct. at 2260 (explaining that judicial bias

3   doctrine encompasses "a more general concept of interests that tempt adjudicators to

4   disregard neutrality"). The Court has thus required recusal if the judge "becomes

5   'embroiled in a running, bitter controversy' " with one of the litigants; if she becomes

6   "enmeshed in matters involving [a litigant],"; or "if the judge acts as 'part of the

7   accusatory process,' At bottom, then, the Court has found a due process violation when a

8   judge holds two irreconcilable roles, such that her role as an impartial arbiter could

9   become compromised. . . ."

10      (*1315) The burden is on the judge to disqualify herself, even if a party never

11  seeks recusal. . . . ("A judge shall disqualify himself or herself in any proceeding in

12  which the judge's impartiality might reasonably be questioned.") (emphasis added); see

13  also, e.g., 28 U.S.C. § 455(a) (same). . . .

14      (*1321) Finally, the Supreme Court has never required evidence of "personal

15  animus" in order to demonstrate judicial bias. . . . This comports with the Court's

16  longstanding rule, which the dissent recognizes, that a petitioner need not demonstrate

17  actual bias in order to succeed on his claim. See Caperton, 129 S.Ct. at 2262–63. <end of

18  block quote>

19      Since this story has been picked up in the Press (WND, a major news outlet on the

20  Internet. See Exhibit 4 as an exemplar) and is probably headed for the Ninth, it is all the

21  more important for the public's confidence in the Judiciary that this case is seen to be

22  fairly adjudicated by a neutral and detached arbiter. Any appearance of impropriety,

23  regardless of whether such impropriety is actually present or proven, erodes that

24  confidence and weakens our system of justice.

25

26

27

28

1      Therefore, as it appears unseemly for a federal judge to sit on a case involving his

2  former recent state court brethren/colleagues, public confidence in the judiciary and law

3  requires the judge to disqualify himself and the burden is on the judge to do so here.

4

5      DATED this __13__ day of December, 2011

6

7                               By:

8                               P. Michael Palmer
                                Pro se

9

10  **Certificate of Service:**

11  Copies of the foregoing mailed via
    U.S. Mail on December __13__, 2011 to:

12

13

14  Pamela J. Linnins
    1275 W. Washington
    Phoenix, AZ 85007

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Mike Palmer
18402 N. 19th Ave., #109
Phoenix, AZ 85023


October 29, 2011

Pamela J. Linnins
1275 W. Washington
Phoenix, AZ 85007-2997


Greetings Mrs./Miss Linnins:

I am the pro se plaintiff in *Palmer v. Jones, et al.*

Enclosed for your consideration is form AO 85, *Consent to Exercise of Jurisdiction by a US Magistrate Judge*, sent me by the court. I have filled it in and signed my half.

About two months ago I attended a hearing in the federal court in Flagstaff for the (good) Quartzsite police officers who were seeking a Preliminary Injunction after being wrongfully terminated. There, Judge Aspey "strongly encouraged" both parties to consent to a Magistrate judge.

While he didn't say it, I read on the 'net that there is a Judicial Emergency in the Arizona District due a backlog after Judge Roll was murdered. (First page of Ninth's Order attached.) I have no objection, especially now as a courtesy to the court.

If you also have no objection, then please sign for the defendants. You could mail the form back to me and I could mail it to the clerk, but it would be more efficient if you mailed it directly. To that end, I have enclosed a pre-addressed mailing label for your convenience. Since the form was sent to me folded by the court, it doesn't appear it has to be flat-unfolded for submission and a regular business envelope will suffice for mailing.


Thank you,


_____
Mike Palmer


Attachment (1)
Enclosures (2)


"Hate evil, love good; maintain justice in the courts." Amos 5:15

**FOR PUBLICATION**

# JUDICIAL COUNCIL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| IN APPROVAL OF THE JUDICIAL EMERGENCY DECLARED IN THE DISTRICT OF ARIZONA | ORDER |

Filed March 2, 2011

Before: Alex Kozinski, Chief Judge, Procter Hug, Jr., Sidney R. Thomas, Raymond C. Fisher, Ronald M. Gould, and Johnnie B. Rawlinson, Circuit Judges, Audrey B. Collins, Roger L. Hunt, James Ware, Chief District Judges, and Stephen M. McNamee and Robert H. Whaley, District Judges.

---

## ORDER

On January 20, 2011, Chief Judge Roslyn Silver declared a thirty day judicial emergency in the District of Arizona pursuant to 18 U.S.C. § 3174(e). Finding no reasonably available remedy, the Judicial Council agreed to continue the judicial emergency for an additional one-year period and suspend the time limits of 18 U.S.C. § 3161(c). The continued judicial emergency will end on February 19, 2012.

The attached *Report by the Judicial Council of the Ninth Circuit Regarding a Judicial Emergency in the District of Arizona* constitutes the findings of fact and conclusions of law of the Judicial Council justifying a declaration of judicial emergency pursuant to 18 U.S.C. § 3174. This report was submitted to the Director of the Administrative Office of the U.S. Courts. *See* 18 U.S.C. § 3174(d).

# EXHIBIT 2

RE: Request for unopposed motion

From: "Linnins, Pamela" <Pamela.Linnins@azag.gov>
To:    "'M'" <mikepalmer_arizona@fastmail.fm>
Date:  Wed, 16 Nov 2011 4:02 PM

Mr. Palmer:

I apologize for not getting back to you any earlier.

I have spoken with my clients.  Based upon this, you may indicate
to the court I take no position with regard to your proposed
Motion for NCIC Audit.

Regarding the request to stipulate to a magistrate judge, at this
time I am unable to agree to the request.  If this changes in the
future I will let you know.


Pamela Linnins
Assistant Attorney General
Office of the Arizona Attorney General
1275 W. Washington Street
Phoenix, Arizona 85007
(602) 542-4385 Facsimile
Pamela.Linnins@azag.gov

This transmission may contain information that is privileged,
confidential and/or exempt from disclosure under applicable law.
If you are not the intended recipient, you are hereby notified
that any disclosure, copying, distribution, or use of the
information contained herein (including any reliance thereon) is
strictly prohibited. If you received this transmission in error,
please immediately contact the sender and destroy the material in
its entirety, whether in electronic or hard copy format.


-----Original Message-----
From: M [mailto:mikepalmer_arizona@fastmail.fm]=20
Sent: Tuesday, November 15, 2011 9:58 AM
To: Linnins, Pamela
Subject: Request for unopposed motion

Greetings Pamela:

I'm the (dumb) pro se in 11-CV-1896, Palmer v. Jones, et al.

Since you acknowledged in your Motion to Dismiss that only the
feds can grant an audit of the NCIC, I plan to file a Motion
Wednesday for the Court to grant an Audit of the NCIC to see if

I've been harmed in that particular instance. It will need to come out someday. Will you opposeor no?

Please reply with a "yea" or "nay."

P.S. I did not get a copy of the form to refer this matter to a Magistrate judge, so I presume you did not choose to refer it? Please let me know also for my information.

Thank you,

Mike Palmer <><

# EXHIBIT 3

IN THE SUPREME COURT OF THE STATE OF ARIZONA

---

In the Matter of:                    )
                                     )
ESTABLISHMENT OF THE TASK            )
FORCE ON THE CODE OF JUDICIAL        )     Administrative Order
CONDUCT                              )     No. 2007 - 36
                                     )
                                     )
_____)

     Under Article 6, Sections 1 and 3 of the Arizona Constitution, the Supreme Court has administrative supervision over all state and local courts and the authority to supervise all judges within the integrated judicial department. In carrying out its responsibilities, the Court has adopted a Code of Judicial Conduct applicable to all state and local judges based on the Model Code of Judicial Conduct approved by the American Bar Association. Using the model code as a guideline, the Court approved new judicial codes in 1975 and again in 1993. The current version of the judicial code is contained in Rule 81 of the Rules of the Supreme Court.

     Following four years of intensive study and review by the ABA Joint Commission to Evaluate the Model Code of Judicial Conduct, the ABA House of Delegates adopted a new model code at its mid-year meeting in February 2007. The new model code contains substantial changes and numerous recommendations for updating and revising comparable state codes. To help ensure the highest standards of judicial conduct, the Chief Justice has deemed it advisable to organize a task force to review and, if necessary, recommend revisions to the current judicial code governing the conduct of all judges in the Arizona Judicial Branch.

     Now, therefore, pursuant to Article 6, Section 3, of the Arizona Constitution,

     IT IS ORDERED that the Task Force on the Code of Judicial Conduct is established as follows:

     1. **Purpose.** The Task Force shall review the 2007 Model Code and the current Arizona Code of Judicial Conduct and, if appropriate, recommend changes to the state code. The Task Force shall examine the structure and format of the codes, the content of individual canons and rules, the relationship of the canons to one another, and modifications that reflect the unique character and customs of our state and the various methods employed throughout the state to select, appoint and elect judges. The Task Force may consider the canons out of order to accommodate concerns about the specific provisions in the code that govern judges who will stand for election or re-election in the 2008 general elections.

     2. **Membership.** The initial membership of the Task Force is attached as Appendix A. The Chief Justice may appoint additional members as needed or desired. Terms of the Task Force members shall expire at the conclusion of the project.

     3. **Meetings.** At the discretion of the Task Force chair, meetings may be scheduled,

canceled or moved.  All meetings shall comply with the Arizona Code of Judicial Administration § 1-202: Public Meetings policy of the Arizona Judicial Branch.

   4.   **Reports.**   The Task Force shall submit an interim report of its findings or recommendations to the court in January 2008 and a final report at the conclusion of the project.

   5.  **Administrative Support**.  The Administrative Office of the Courts and the Supreme Court's Judicial Ethics Advisory Committee shall provide administrative support and staff for the Task Force, in cooperation with the Commission on Judicial Conduct.


   Dated this <u>26th</u> day of <u>April</u>, 2007.




_____
RUTH V. MCGREGOR
Chief Justice



Attachment:  Appendix A

# ATTACHMENT A

## TASK FORCE ON THE CODE OF JUDICIAL CONDUCT

### MEMBERSHIP

Judge G. Murray Snow, Chairperson
Court of Appeals, Division 1
Maricopa County

Judge Peter Cahill, Vice Chairperson
Superior Court
Gila County

Judge J. William Brammer, Jr.
Court of Appeals, Division 2
Pima County

Judge Robert M. Brutinel
Superior Court
Yavapai County

Judge Louis Dominguez
Municipal Court
Maricopa County

Peter Dunn
Public/Attorney Member
Maricopa County

Lawrence Hammond
Public/Attorney Member
Maricopa County

Judge Wallace R. Hoggatt
Superior Court
Cochise County

Margaret C. Kenski, Ph.D.
Public Member
Pima County

Judge Dennis Lusk
Justice Court
Pinal County

Judge Michael O. Miller
Superior Court
Pima County

Judge Barbara R. Mundell
Superior Court
Maricopa County

Karen E. Osborne
Public Member
Maricopa County

IN THE SUPREME COURT OF THE STATE OF ARIZONA

| In the Matter of: | ) | |
|---|---|---|
| | ) | |
| APPOINTMENT OF MEMBERS | ) | |
| TO THE COMMITTEE ON JUDICIAL | ) | Administrative Order |
| EDUCATION AND TRAINING | ) | No. 2006- 4 |
| | ) | |

In accordance with revised Administrative Order No. 99-08, the Chief Justice is responsible for appointing members of the Committee on Judicial Education and Training. Therefore, after due consideration,

IT IS ORDERED that the individuals listed below are appointed as members of the Committee on Judicial Education and Training for terms beginning upon entry of this Order and ending as set out below:

### *Reappointments*

The Honorable Roxanne Song Ong
Chair                                       Term Expires:  December 31, 2006

The Honorable Ann S. Timmer
Vice Chair                                  Term Expires:  December 31, 2006

Darla Akers
Judicial Assistant                          Term Expires:  December 31, 2008

Mike Baumstark
Administrative Director of the Courts
 or Deputy Director                         Term Expires:  December 31, 2008

The Honorable Wallace Hoggatt
Superior Court Judge                        Term Expires:  December 31, 2008

Tim Hardy
Committee on Probation Education            Term Expires:  December 31, 2008

### *New Appointments*

The Honorable John Hudson
Municipal Court Judge (Attorney)            Term Expires:  December 31, 2008

Rik Schmidt
Director of Juvenile Court

Term Expires:  December 31, 2008

Jane Roberts
Facilities Representative

Term Expires:  December 31, 2008

The Honorable William Sutton
Justice Court Judge (Non-Attorney)

Term Expires:  December 31, 2008

Diane Sonntag
Court Reporter

Term Expires:  December 31, 2008

The Honorable W. Scott Bales
Appellate Court Judge

Term Expires:  December 31, 2008

The Honorable G. Murray Snow
Judicial College of Arizona

Term Expires:  December 31, 2008

Marty Figueroa-Torres
Judicial Staff Education Committee

Term Expires:  December 31, 2008

Dated this 4th_ day of January, 2006.


RUTH V. MCGREGOR
Chief Justice

# EXHIBIT 4

This is a WorldNetDaily printer-friendly version of the article which follows.
To view this item online, visit http://www.worldnetdaily.com/index.php?pageId=349713

**WorldNetDaily**

Sunday, November 20, 2011

**POLICE STATE, USA**
**WND Exclusive**

## Man ordered to surrender guns – just for blogging! ...

'My life's in danger now. I can't defend myself, I can't defend you'

Posted: September 29, 2011
9:44 pm Eastern

By Joe Kovacs

WND



An Arizona man has filed a federal lawsuit against some of the state's top judges, claiming they're taking away his freedom of speech and right to own firearms, all because someone didn't like what he wrote on his blog.

"You can't suspend someone's constitutional rights [for blogging]," said Mike Palmer, who is bringing forth the legal action. "Everybody in America blogs or Twitters, so it's a First and Second Amendment issue."

The scenario started when Palmer, a 55-year-old Christian missionary from Phoenix, was online discussing "spiritual death" often referred to in the Bible.

*Questions about guns? The ultimate searchable research guide to firearms and ammo is now on DVD ...*

But, according to the suit, a woman from Prescott, Ariz., Melody Thomas-Morgan, complained to authorities that Palmer was threatening her with "death," keeping that word in quotes in her legal filings.



Judge Kenton Jones

Palmer explains, "It is true that the blog, 'That Woman Jezebel,' talks about spiritual life and spiritual death. ... Spiritual 'death' as in 'The wages of sin is death.' (Romans 6:23) ... It is not true that the blog ever mentions the 'death' of Miss Thomas-Morgan."

Kenton Jones, superior court judge for Yavapai County, went along with the woman's harassment complaint and ordered Palmer to surrender his guns.

"The order says that I am not allowed to possess firearms or ammunition, and directs me to turn over any weapons to the Yavapai County Sheriff's Office," Palmer told WND.

Palmer indicated he does not own any weapons at this time, but when pressed on whether he had any guns previous to the order, he said, "No comment."

"I certainly want my gun rights," he added. "There is no law in Arizona which allows the courts to suspend any constitutional right, but in this instance, my Second Amendment right. And, of course, my life's in danger now. I can't defend myself, I can't defend you. I can't defend my fellow man."

*(Story continues below)*

Palmer's suit is seeking a restraining order that would grant him back his constitutional rights.

He wonders if the Christian nature of his blogging has anything to do with the action taken against him.

"Being a Christian seems to make me fair game," he said. "I bet if I were Muslim and writing about physical beheading on a blog, no judge would dare touch me with an injunction. Ironic."

Not only is Justice Jones named as a defendant in Palmer's suit, so are five other jurists on the state supreme court, including Chief Justice Rebecca White Berch.

The issue is reminiscent of another Arizona case, where a local judge ordered Michael Roth of Quartzsite, Ariz., to surrender his weapons because Town Councilman Joe Winslow was offended when Roth allegedly called the lawmaker a "turd."

In fact, Palmer has set up a blog called Michael's Law in honor of the Roth case to tell his own story.

2

Man ordered to surrender guns – just for blogging!

4. **I need a Court Order because:**   (PRINT both the date(s) and briefly what happened):

**Describe what happened (Attach additional paper if necessary – Do not write on back):**

| Date(s) | |
|---|---|
| 15July | Roth Blocked door To Town Hall and Said "Hey, Jerd Where's The Keys To The Arms Locker". As I entered Town Hall He said "Tell one of The other Jerds To Bring out a key." |

Quartzsite Councilman Joe Winslow lists reasons he sought a restraining order against resident Michael Roth, claiming his entrance to town hall was blocked and that he was called a synonym for dog feces.

Winslow told Karen Slaughter, the elected justice of the peace for the region, what he wanted was that Roth and others with similar views "not be allowed to walk around armed. To me, I'm not a psychologist or psychiatrist, but I have been diagnosed with PTSD (post-traumatic stress disorder) ... that's what I'm concerned with, that he's gonna get so far into my personal space that I'm gonna react without thinking. I'm not making threats or anything like that. I'm not proud of that, but it's the way I am."

"I know that I'm 71 years old," Winslow said. "I don't want to be a statistic, I don't want to go to jail and I don't want to go in the hospital. But based on my history of 24 years in the service, I am more concerned about my reaction to his aggression than anything else, especially now that I believe that he is carrying a handgun. His actions have demonstrated in the past to me that he is not in full control of his emotions."

After WND's coverage of Roth's case, Judge Slaughter eventually reversed her decision on the weapons ban, but Roth says she refused to dismiss his attorney fees.

**Special offers:**

Questions about guns? The ultimate searchable research guide to firearms and ammo is now on DVD ...

A former Hitler youth gives a chilling, but life-saving warning to America in "Defeating the Totalitarian Lie," just $4.95 today only!

Shut up, America! It's the end of free speech

3